A. V. COSTANTINI, Plaintiff-Appellant,

v.

TRANS WORLD AIRLINES and Does I through XC, Defendants-Appellees.

No. 80-4239.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 1981.

Decided July 22, 1982.

A. V. Costantini, pro se.

Stephen C. Tausz, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants-appellees.

Before WALLACE and PREGERSON, Circuit Judges, and BYRNE *, District Judge.

PREGERSON, Circuit Judge:

Appellant Costantini appeals from the district court's judgment dismissing his complaint as barred by res judicata. Because we agree that res judicata bars the instant lawsuit, we affirm.

Appellant operates a travel agency business in the San Francisco bay area. In 1972, he entered into a license agreement with Montgomery Ward & Co. ["Ward"] that permitted him to open branch offices in Ward stores nationwide. He opened one such branch office in June 1972 and secured approvals from the Air Traffic Conference of America ["ATC"], a division of the Air Transport Association of America ["ATA"], and from the International Air Transport Association ["IATA"]. These approvals are a prerequisite for a branch office to issue interstate and international airline tickets.

In March 1973, appellant opened a second Ward branch office, and shortly thereafter a third. ATC and IATA refused to approve these offices. In April 1973, Ward informed appellant that it would not allow him to open more Ward branches until he could secure ATC and IATA approval. In April 1974, Ward cancelled the license agreement altogether, effective June 15, 1974.

In February 1974, appellant and his wife filed suit in the United States District Court for the Northern District of California against numerous defendants, including TWA as well as other airlines and ATA. The complaint was dismissed without prejudice, pursuant to a stipulation of the parties, in September 1974.

In October 1975, appellant and his wife filed a new complaint against ATA, ATC, TWA, and various other airlines. This complaint ["the 1975 complaint"] stated several federal counts and some pendent state claims.[1] The district court dismissed the 1975 complaint in July 1977 and entered judgment against appellant and his wife on September 1. The Ninth Circuit affirmed on appeal.

In 1978, appellant made a FOIA request to the Civil Aeronautics Board and was sent a copy of a June 1973 letter from TWA to the CAB in which TWA said appellant was suspected of selling as franchises what he was representing as branch offices. This charge, if true, would be grounds for disapproval of the "branch offices" by ATC and IATA. In a follow-up FOIA request in 1979, appellant obtained an August 1972 letter from TWA to ATA containing the same allegation. According to appellant, he had never known that TWA was spreading this particular charge against him, because TWA had assured him in a May 1973 letter that the only adverse information it had heard about his business concerned allegations of illegal ticket sales and unqualified branch managers.

Appellant began the instant lawsuit in February 1980. His amended complaint ["the 1980 complaint"] named TWA and ninety Does as defendants, alleged diversity jurisdiction, and pleaded a single cause of action. It alleged that the defendants conspired to prevent appellant from opening

---

* The Honorable William Matthew Byrne, Jr., United States District Judge, Central District of California, sitting by designation.

1. Count II of the 1975 complaint alleged a conspiracy to monopolize trade, pursuant to which defendants had agreed that plaintiffs' proposed Ward branch offices would be disapproved.

Count IV alleged unfair competition under California law, charging that defendants communicated false information about plaintiffs' business that resulted in "baseless charges" against plaintiffs by the ATC. Count V alleged interference with business relations and incorporated the earlier factual allegations.

his planned Ward branch offices, and did so by "secretively submitting to ATC and IATA false statements that the branch offices of plaintiff's United Travel Service were being sold as franchises and were under a different ownership than the parent offices."

The 1980 complaint was dismissed by Judge Schwarzer in April 1980 on the ground that it was barred by res judicata. It is from this judgment that appellant appeals. Appellate jurisdiction is based on 28 U.S.C. § 1291.

DISCUSSION

■ Appellant has mistakenly contended that res judicata applies only to "questions essential to and actually litigated in the first action." Actually, the doctrine of res judicata [or claim preclusion] "bar[s] all grounds for recovery which could have been asserted, *whether they were or not*, in a prior suit between the same parties . . . on the same cause of action." *Ross v. IBEW*, 634 F.2d 453, 457 (9th Cir. 1980) (emphasis added). Hence, appellant's contention that the question involved in his present action was never actually litigated in the prior action is simply irrelevant.[2]

In the district court, appellant pointed to two differences between the 1975 suit and the instant suit which, he argued, made res judicata inapplicable. First, he has alleged new facts—that TWA falsely told ATC and IATA that appellant's branch offices were actually franchises. Second, he has changed his legal theory from interference with his relationship with his employees to interference with his relationship with ATC and IATA.

This court has held that a federal court sitting in diversity must apply the res judicata law of the state in which it sits. *Gramm v. Lincoln*, 257 F.2d 250, 255 n.6 (9th Cir. 1958). We have applied that rule even where the prior action was in federal court and involved federal questions. *See St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864, 868 (9th Cir. 1979) (collateral estoppel rules of forum state applied where prior judgments were federal criminal convictions). Hence California's law of res judicata dictates what preclusive effect is to be accorded to the prior judgment against appellant. That California law, however, determines the res judicata effect of a prior federal court judgment by applying *federal* standards.[3] Therefore, those federal standards are applicable here to determine the preclusive effect of the prior judgment.

Under federal law, appellant does not avoid the bar of res judicata merely because he now alleges conduct by TWA not alleged in his prior suit,[4] nor because he has pleaded a new legal theory.[5] Rather, the crucial question is whether appellant has stated in the instant suit a cause of action different from those raised in his first suit.[6]

■ This circuit approaches that crucial question by applying several criteria to determine whether successive lawsuits involve a single cause of action:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of

---

**2.** Appellant has apparently confused res judicata with the related but distinct doctrine of collateral estoppel, which does apply only when "an issue is actually and necessarily determined." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

**3.** *Younger v. Jensen*, 26 Cal.3d 397, 411, 161 Cal.Rptr. 905, 914, 605 P.2d 813, 822 (1980); *Levy v. Cohen*, 19 Cal.3d 165, 172–73, 137 Cal. Rptr. 162, 167, 561 P.2d 252, 257 (1977); 4 B. Witkin, *California Procedure*, Judgment, § 156(b) (2d ed. 1971).

**4.** *Lester v. NBC*, 217 F.2d 399, 400 (9th Cir. 1954), *cert. denied*, 348 U.S. 954, 75 S.Ct. 444, 99 L.Ed. 746 (1955) ("a judgment's finality ap-

plies to facts which might have been pleaded with reference to the same event as well as to those actually pleaded").

**5.** *Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976) (res judicata bars "assertion of every legal theory . . . that might have been raised" in first action).

**6.** *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) ("[r]es judicata preclusion extends only to claims that arise out of the same 'cause of action' asserted in the prior action").

the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980). The last of these criteria is the most important. *Id.*[7]

■ Both of appellant's lawsuits *did* "arise out of the same transactional nucleus of facts": TWA's alleged participation in efforts to ensure the collapse of appellant's license agreement with Montgomery Ward. Both lawsuits charge TWA with spreading falsehoods about appellant's business practices so as to ensure that ATC and IATA would disapprove the branch-office arrangement.[8] The only significant difference is that appellant claims to have unearthed one additional falsehood communicated by TWA. The 1975 suit alleged that falsehoods concerning illegal ticket sales and unqualified branch managers were spread, whereas the instant suit charges false stories that appellant's branch offices were actually franchises. This evidentiary detail is scarcely enough to establish that the instant lawsuit arises out of a different "transactional nucleus of facts" than that which generated the 1975 suit.

The other criteria for finding a single cause of action are also met. Clearly, TWA's freedom from liability for the loss of appellant's license agreement, established by the 1975 action, could be impaired by this instant action. The evidence in the instant action would apparently be virtually identical with evidence offered in the 1975 action, except for the 1972 TWA letter to ATA that appellant claims revealed an additional rumor that TWA had spread. Finally, the two suits do involve infringement of the same right: the current suit seeks damages for violation of appellant's right to advantageous business relations with Montgomery Ward, just as the 1975 suit did.[9]

Thus the cause of action involved in the instant lawsuit is identical to one raised in appellant's 1975 suit, so that res judicata was properly invoked by the district court.

■ Appellant seeks to escape this conclusion by arguing that TWA fraudulently concealed the facts upon which his current cause of action is based. We need not decide whether there is a fraudulent concealment exception to the law of res judicata because no fraudulent concealment has been properly presented. Appellant bases his argument on a letter TWA sent him in May 1973, in reply to his inquiry as to what adverse information TWA possessed about his business. The letter referred to charges that appellant had used illegal tickets and unqualified branch managers, and then added that a TWA sales representative had "ma[d]e available to your personnel any information regarding your offices that was in our possession." Appellant insists that this constituted a fraudulent concealment of the fact that TWA had itself communicated an entirely different charge against appellant to ATA.[10]

Even assuming that the letter was a deliberate misrepresentation—which is far from clear—appellant has not made out a claim of fraudulent concealment because he has not pleaded with particularity facts establishing that he diligently attempted to uncover the information that he says was

---

7. No single criterion can decide every res judicata question; identity of causes of action "cannot be determined precisely by mechanistic application of a simple test." *Abramson v. University of Hawaii*, 594 F.2d 202, 206 (9th Cir. 1979).

8. *See* note 1 *supra*.

9. Paragraph 38 of the 1980 complaint seeks damages for the loss of the opportunity to open branch offices in Ward stores, just as ¶ 106 of the 1975 complaint had done. It is true that appellant sought those damages in his 1975 action under a Sherman Act monopolization theory, whereas he now claims interference with his business relationship with ATC and IATA. But, as mentioned above, a mere change of legal theory does not imply a new cause of action.

10. *See* page 1200 *supra*.

concealed.[11] Appellant filed his first (1974) lawsuit nine months after receiving the supposedly deceptive letter, and alleged, inter alia, that TWA had conspired to cause ATC to disapprove his branch offices. Certainly he should have made discovery requests for any communications about his business that TWA and ATC might have exchanged. Appellant's contention that he had "no rational basis for suspecting" that the May 1973 letter might not have given him all the adverse information TWA possessed about his business is simply not credible. Appellant had *every* reason, when he filed the original suit, to be suspicious of a party he was alleging had "communicated false and fraudulent information ... resulting in baseless charges" against him. 1975 Complaint, ¶ 42(c).

Appellant insists that he did resort to discovery procedures in his 1975 suit and indeed made "ceaseless efforts to discover the truth." 1980 Complaint, ¶ 34. But he gives no details of those efforts and never explains what discovery requests he made in the 1975 lawsuit, nor why those requests failed to unearth TWA's August 1972 letter charging him with selling franchises. Hence he has not adequately alleged that he acted with reasonable diligence in trying to discover the allegedly concealed information.[12]

Thus, the district court properly concluded that the instant lawsuit is barred by res judicata. Appellant has not shown the existence of any "fraudulent concealment", even if such a showing would permit him to avoid the bar of res judicata.

AFFIRMED.

---

11. Such pleading is a requirement of federal law. *Rutledge v. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).

12. Moreover, the cases in which the fraud exception to res judicata was applied differ crucially from the instant case in that they involve situations where defendant's misconduct prevented plaintiff from knowing, at the time of the first suit, either that he had a certain claim or else the extent of his injury. *See, e.g., Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1978) (plaintiff discovered cause of action for bad-faith refusal to satisfy his claim only when breach-of-contract case went to jury); *United States Rubber Co. v. Lucky Nine, Inc.*, 159 So.2d 874 (Fla.App.1964) (defendant's deceitful testimony at the first trial concealed from plaintiff the true amount it was owed); *Hyyti v. Smith*, 67 N.D. 425, 272 N.W. 747 (1937) (deception by an attorney connected with defendant's law firm kept plaintiff from learning that she could seek compensation for loss of support as well as out-of-pocket expenses in her wrongful death action). Here, however, appellant knew when he brought his original suit that he had a claim against TWA for attempting to block his license agreement with Montgomery Ward by having ATC and IATA disapprove it. That was the gist of Count Two of the 1975 complaint. And he knew what injury TWA had allegedly inflicted on him: loss of the opportunity to open branch offices in the Ward stores. Thus even if defendant's May 1973 letter can be termed "fraudulent," it did not prevent appellant from realizing what cause of action he had against TWA nor what his damages were.