**C.D. ANDERSON & CO., INC.,**
Plaintiff–Appellant,

v.

**Michael A. LEMOS,**
Defendant–Appellee,

and

**John Lemos, Defendant.**

**No. 87–1526.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1987.

Decided Nov. 16, 1987.

Carl Diehl, San Francisco, Cal., for plaintiff-appellant.

Anthony M. Englese, San Francisco, Cal., for defendant-appellee.

Before POOLE and CANBY, Circuit Judges, and KING,* District Judge.

* Honorable Samuel P. King, United States District Judge, District of Hawaii, sitting by desig-

SAMUEL P. KING, District Judge:

Appellant C.D. Anderson & Co., Inc. appeals from the district court's grant of summary judgment in favor of Appellee Michael A. Lemos. The district court found that C.D. Anderson's claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, were barred by an award rendered in an arbitration between C.D. Anderson and Lemos. We affirm the district court's ruling.

## I.

## BACKGROUND

C.D. Anderson & Co., Inc. is a stock brokerage company. On December 15, 1983, Michael A. Lemos entered into a written contract with C.D. Anderson by which C.D. Anderson agreed to open an account for Lemos and to act as Lemos' stockbroker. Michael's brother, John, was authorized to act as Michael's agent.

By April of 1984, Michael Lemos had deposited about $19,800 into the account. However, trading on behalf of the account generated a deficit of about $22,700. Michael Lemos and C.D. Anderson disagreed over how to settle the deficit.

In their written contract, C.D. Anderson and Michael Lemos had agreed "that *any* controversy between us arising out of or related to this agreement, the interpretation or breach thereof, or in any way pertaining to [Michael Lemos'] account(s), shall be settled by arbitration...." (Emphasis in original.)

Accordingly, on April 19, 1984, Michael Lemos filed a Statement of Claim with the National Association of Securities Dealers seeking return of his $19,800 in deposits and forgiveness of his $22,700 debt. On July 5, 1984, C.D. Anderson's president, Patricia Love Anderson, signed a Uniform Submission Agreement by which the corpo-

nation.

ration agreed to submit the controversy to arbitration. On July 6, 1984, C.D. Anderson filed with the arbitrators an Answer and Counterclaim seeking payment of the $22,700 debt.

On July 1, 1985, C.D. Anderson commenced an action against both Michael and John Lemos in the United States District Court for the Northern District of California, seeking payment of the $22,700 debt, interest, costs and fees, treble damages, and punitive damages. The Complaint set forth causes of action for violations of Rule 10b–5 and Section 10 of the Securities Exchange Act of 1934, RICO violations under 18 U.S.C. § 1962(c) & (d), violations of California securities law, fraud, breach of contract, and breach of warranty.

While discovery proceeded in the federal action, the arbitration hearings were held, and on May 8, 1986, the arbitrators rendered an award ("Award"), denying both Michael Lemos' claim and C.D. Anderson's counterclaim.

Michael Lemos then filed a motion in the federal action for summary judgment on the basis of the Award, and C.D. Anderson cross-moved for partial summary judgment. The district court granted summary judgment in favor of Michael Lemos on the grounds that C.D. Anderson had agreed to arbitrate the claims which were before the court and the Award disposed of those claims. C.D. Anderson's claims against John Lemos were dismissed pursuant to a Stipulation for Dismissal With Prejudice entered December 11, 1986.

## II.

## DISCUSSION

■ C.D. Anderson contends that its federal securities law and RICO claims were not arbitrable and that it could not waive its right to litigate the claims in federal court. The Supreme Court recently settled this issue by holding that Rule 10b–5 and RICO claims are arbitrable. *Shearson/American Express, Inc. v. McMahon*, — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

C.D. Anderson contends *McMahon* should not apply retroactively to this case. Instead, it relies on earlier cases in which this Circuit held that a customer could not be compelled by a stock broker to arbitrate federal securities law claims even though the customer agreement contained a standard provision to submit to arbitration any controversies arising out of the agreement. *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir.1986); *Badart v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 797 F.2d 775 (9th Cir.1986), *vacated* — U.S. —, 107 S.Ct. 3204, 96 L.Ed.2d 691 (1987); *Conover v. Dean Witter Reynolds, Inc.*, 794 F.2d 520 (9th Cir.1986), *vacated* — U.S. —, 107 S.Ct. 3203, 96 L.Ed.2d 691 (1987).

Those cases are distinguishable from this case in that C.D. Anderson and Michael Lemos have actually submitted their controversy to arbitration and secured an award, whereas in *Letizia, Badart,* and *Conover* the issue was whether a broker could compel the customer to arbitrate a controversy. We hold that by submitting its federal securities law and RICO claims to arbitration, C.D. Anderson waived any right it had to litigate those claims in federal court. Therefore, we need not decide whether *McMahon* shall have retroactive effect, for under the facts of this case we are faced with an issue of first impression in this Circuit, and our holding is consistent with *McMahon*.

C.D. Anderson argues that the controversy submitted to the arbitrators did not include the federal securities law and RICO claims. It correctly points out that it cannot be compelled to arbitrate an issue that it did not agree to arbitrate. *See Williams v. E.F. Hutton & Co.*, 753 F.2d 117 (D.C. Cir.1985); *Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1356 (9th Cir.1983). Here, however, C.D. Anderson had signed a contract requiring "any dispute ... between the parties to be arbitrated." The dispute was submitted to arbitration pursuant to that clause. The district court accordingly did not err in concluding that the securities law and RICO claims were submitted.

■ C.D. Anderson also argues that the arbitration award cannot have preclu-

sive effect in this case. This Circuit has held that "[a]n arbitration decision can have res judicata or collateral estoppel effect, even if the underlying claim involves the federal securities laws." *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1360 (9th Cir.1985). Res judicata and collateral estoppel questions are reviewed *de novo. A & A Concrete v. White Mountain Apache Tribe,* 781 F.2d 1411, 1414 (9th Cir.1986), *cert. denied,* — U.S. —, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986).

Res judicata "bars 'all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties ... on the same cause of action.' " *McClain v. Apodaca,* 793 F.2d 1031, 1033 (9th Cir.1986); *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201 (9th Cir.1982), *cert. denied* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982) (both opinions quoting *Ross v. International Brotherhood of Electrical Workers,* 634 F.2d 453, 457 (9th Cir.1980)). Four criteria should be considered in determining whether successive lawsuits involve the same cause of action: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Costantini,* 681 F.2d at 1201–02. "The last of these criteria is the most important." *Id.*

As to whether the arbitration involved the same cause of action as this suit, both suits arose out of the same transactional nucleus of facts, namely the trading that occurred in connection with Michael Lemos' account. Therefore, there is identity of the cause of action between the Award and this case.

C.D. Anderson complains that insofar as the arbitrators found negligence or violations of regulation T or the NASD or NYSE rules, the arbitrators manifestly disregarded the applicable law. However, there is no reason to conclude that the arbitrators found such negligence or viola-

tions. The Award does not specify the grounds for the arbitrators' decision and does not discuss the possibility of negligence or violations on C.D. Anderson's part.

Furthermore, the Award is consistent with a finding that C.D. Anderson was not negligent and did not violate regulation T and the NASD and NYSE rules. Michael Lemos' defenses to C.D. Anderson's arbitration counterclaims were that the $22,700 debt in his account with C.D. Anderson was caused by C.D. Anderson's negligence, and violation of regulation T and the NASD and NYSE rules. In addition, Michael Lemos raised the defense that the debt was incurred by his brother, John, who Michael claimed was not authorized to act as his agent.

In order to deny C.D. Anderson's counterclaims the arbitrators need not have found C.D. Anderson negligent or in violation of the regulations, for it would have been sufficient to find that C.D. Anderson failed to establish its claim or that Michael Lemos established his defense that his brother was not his agent. Furthermore, there is every reason to believe that the arbitrators were not persuaded by Michael Lemos' negligence and regulation defenses, for these were identical to Michael Lemos' claims, which the arbitrators denied.

AFFIRMED.