979 F.2d 854
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jack CHAMBERS, Plaintiff-Appellant,
v.
SPRINGS INDUSTRIES, INC., Defendant-Appellee.
Jack CHAMBERS, Plaintiff-Appellant,
Eric F. Edmunds, Jr.; Arthur Toll; Daniel M. Toll, Appellants,
v.
SPRINGS INDUSTRIES, INC., et al.; Lianne Von Fricht;
Jeffrey Wallbridge; John Cravens; Phylliss Long;
Dian R. Walsh, Inc., Defendants-Appellees.
 Nos. 91-55015, 91-55110.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 19, 1992.
Decided Nov. 19, 1992.
 
 Appeal from the United States District Court for the Central District of California; No. CV 90-3447-AAH, Andrew Hauk, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED IN PART AND REVERSED IN PART.
 WILLIAM A. NORRIS, REINHART and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The facts and background of this dispute are well known to the parties and do not need much elaboration. Suffice it to say, on December 12, 1986, Springs filed a complaint against Kris Knit and Chambers based on a debt of $63,404.09 allegedly owed by Kris Knit and personally guaranteed by Chambers. In a motion for summary judgment, Springs prevailed. Chambers appealed, and this court affirmed. Springs Indus. v. Kris Knit, Inc., 880 F.2d 1129 (9th Cir.1989) ("SPRINGS I").
 
 
 3
 In 1988, Von Fricht filed a "palimony action" in state court. During discovery in that case, Chambers alleged new evidence was uncovered that established a money-laundering and theft scheme between Craven[1] and Von Fricht. Accordingly, on July 2, 1990, Chambers filed a complaint against Springs alleging claims for violation of RICO, 18 U.S.C. §§ 1961-1968 (1988), tortious interference with economic relationship and prospective business advantage, unfair business practices, fraud, and negligent misrepresentation.
 
 
 4
 On October 22, 1990, the district court granted a motion for summary judgment brought by Springs, apparently concluding that res judicata barred Chambers's claims. The court also granted Springs's motion for sanctions which the court levied in the amount of $10,000. The court concluded that Chambers was responsible for filing a frivolous complaint and filing an unsupportable motion. Chambers appeals the grant of summary judgment and the award of sanctions.
 
 
 5
 * STANDARD OF REVIEW
 
 
 6
 A grant of summary judgment is reviewed de novo. Felton v. Unisource Corp., 940 F.2d 503, 508 (9th Cir.1991). The panel must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 7
 A district court's dismissal on res judicata grounds is subject to de novo review. Guild Wineries and Distilleries v. Whitehall Co., 853 F.2d 755, 758 (9th Cir.1988). The panel reviews for an abuse of discretion the award of sanctions pursuant to Fed.R.Civ.P. 11. Townsend v. Holman Consulting Corp., 914 F.2d 1136, 1143 (9th Cir.1990) (en banc), modified on other grounds, 929 F.2d 1358 (9th Cir.1991).
 
 II
 RES JUDICATA
 
 8
 Chambers argues res judicata is inapplicable to this case because he was not aware of the transactions between Springs and Von Fricht until after summary judgment had been granted in Springs I. Therefore, he could not have made them the subject of litigation prior to the current case. We disagree.
 
 
 9
 "[T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' The final 'judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.' "
 
 
 10
 United States v. Skokomish Indian Tribe, 764 F.2d 670, 672 (9th Cir.1985) (quoting Nevada v. United States, 463 U.S. 110, 129-30 (1983) (citations omitted)). In determining whether res judicata is applicable to a subsequent action, "the crucial question is whether appellant has stated in the instant suit a cause of action different from those raised in his first suit." Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir.) (footnote omitted), cert. denied, 459 U.S. 1087 (1982).
 
 
 11
 To determine whether successive lawsuits involve the same cause of action, we must consider:
 
 
 12
 (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. "The last of these criteria is the most important."
 
 
 13
 C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir.1987) (citations omitted) (quoting Costantini, 681 F.2d at 1202). "Under federal law, appellant does not avoid the bar of res judicata merely because he now alleges conduct ... not alleged in his prior suit, nor because he has pleaded a new legal theory." Costantini, 681 F.2d at 1201 (footnotes omitted).
 
 
 14
 Chambers asserted an unsuccessful defense in Springs I that he now seeks to recharacterize and raise again in a claim against Springs. See Skokomish, 764 F.2d at 672 (quoting Nevada, 463 U.S. at 129-130) ("a final judgment ... on the merits of a case ... is a finality as to ... every matter which was offered and received to ... defeat the claim or demand"). Upon examination of Chambers's complaint, it appears that Chambers is indirectly challenging the propriety of the judgment in Springs I. Chambers's primary claim in the present action is that, as a result of Springs's alleged racketeering activities, a judgment was wrongfully obtained against him in Springs I, resulting in personal damages. Chambers is now challenging as fraudulent the transactions for which he was held liable in Springs I. If this case were to proceed to trial, Springs's right to recover on the guarantee, a right that was established in Springs I, may be destroyed or impaired.
 
 
 15
 Although Chambers would likely present more detailed facts in prosecuting the current case, it is clear that Chambers's case would merely be an extension of facts he already presented to the court in his defense to Springs I. Thus, "substantially the same evidence is presented in the two actions." Costantini, 681 F.2d at 1202 (quoting Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir.1980)).
 
 
 16
 It is also apparent from the record that the two suits involve infringement of the same right. In Springs I, the case involved Springs's right to recover the amount due as a result of Kris Knit's textile orders from Springs. Chambers argues in the current case that Springs is not entitled to the judgment obtained in Springs I because, as a result of a conspiracy and fraud between Springs, Springs's employees and third parties, Chambers did not adequately defend himself in Springs I. Despite Chambers's twist on the arguments, both cases involve Springs's right to payment arising from commercial textile transactions. The practical effect of a judgment in the current case adverse to Springs would be to change the rights of the parties as established in Springs I.
 
 
 17
 Finally, both suits involve the "same transactional nucleus of facts." See Costantini, 681 F.2d at 1202. Springs obtained judgment against Chambers in Springs I based on five invoices reflecting commercial transactions between Kris Knit and Springs between January 7, 1986 and May 30, 1986. In Springs I, Chambers argued in his defense that Von Fricht (1) bounced post-dated checks sent to Craven, (2) shipped merchandise to New York to obtain a commission from Springs, (3) endorsed money and sent it back to Springs, and (4) transshipped Springs's ultrasuede on the black market at the request of Springs. Chambers also argued Springs was rolling funds from the black market transactions into Kris Knit's account to make it current to protect Cravens, who had "stuck his neck out a mile" in extending credit to Von Fricht.
 
 
 18
 In Chambers's current action, he alleges: (1) between October 1985 and July 1986 Von Fricht, Craven, and a third party in New York engaged in transactions to launder money, and commit mail and wire fraud; (2) the transactions involved "purchases and sales of textiles;" and (3) Springs, Craven, and Von Fricht thereafter conspired to hold Chambers liable on losses incurred through these activities, in part by filing suit against Chambers based on fraudulent invoices, and by characterizing the fraudulent conduct as "routine commercial transactions." Although the facts alleged in Chambers's current complaint vary somewhat from his defense in Springs I, the same transactional nucleus of facts is present--transactions between Springs, Craven, Von Fricht, and third parties in New York involving post-dated checks, monetary benefit to Von Fricht, merchandise shipped to third parties by Von Fricht at the request of Springs or Craven, and sham invoices.
 
 
 19
 Chambers attempts to escape the application of res judicata to his new complaint by invoking a newly discovered evidence or fraudulent concealment exception to this doctrine. The record, however, fails to justify the application of such an exception. See Costantini, 681 F.2d at 1201.
 
 
 20
 Prior to summary judgment in Springs I, Cravens had told Chambers about Von Fricht's bounced checks and past due account and that she would be prosecuted for the funds if the amount could not be recovered. Despite Chambers's contention he did not become aware of Craven's involvement in the scheme or of the third-party transactions until after Springs I had ended, Chambers (1) had previously been informed by Von Fricht about the third party black market transshipping transactions: "I know what happened because I asked Lee Ann [sic]," "I know what was going on, and that's only because she wasn't using the merchandise and I was trying to find out myself;" and (2) understood that Craven was the mastermind behind the transshipping transactions and fraudulent invoices that were created to cover the scheme: "He [Craven] had arranged for the merchandise to be delivered to somebody in New York," "The problem they [Springs] created was a relationship there between Lee Ann [sic] and John [Craven] that just got way out of hand," "[S]he was doing this [transshipping] for John [Craven]," "My personal opinion, sir, is all of these invoices are shams.... They were nothing more than invoices that were created for merchandise that was to be shipped to somebody other than a regular customer for cash.... [T]here was no way in the world that these [invoices] are anything more than something created to do some inside paperwork at Springs Mills and to get somebody off the hook," "Whose idea was it, as you understand it, to enter into this series of transactions whereby goods were shipped ostensibly to Kris Knit and then sold to some other party? A: John Craven's." The quotes represent Chambers's own words uttered before summary judgment in Springs I.
 
 
 21
 At the time Springs I was underway, Chambers should have taken further action to discover the true nature of the transactions and relationships of which he was aware. Particularly, Chambers has never deposed Craven (even before this lawsuit was finalized). Chambers's current lawsuit involves identical facts that are merely more particularized. The evidence cited by Chambers was not "newly" discovered because Chambers was generally aware of the facts, but chose not to investigate them fully.
 
 
 22
 Under the circumstances, the factors pointed to by Chambers in an attempt to justify his new complaint are unconvincing, and the grant of summary judgment was proper. Thus, we need not address whether Chambers was required to file his current charges as counterclaims in Springs I.
 
 III
 SANCTIONS
 
 23
 Chambers and his attorneys appeal the district court's imposition of sanctions pursuant to Fed.R.Civ.P. 11 in the amount of $10,000. "Our cases have established that sanctions must be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.' " Townsend, 914 F.2d at 1140.
 
 
 24
 Chambers relies primarily on the argument that because the summary judgment was erroneous, the sanction award predicated on the complaint is necessarily erroneous. However, the district court awarded sanctions in part as a result of an inappropriate motion filed by Chambers's counsel before he researched the applicable law regarding the jurisdictional effect of filing a notice of appeal. When prompted by Springs, the district court verbally concluded the sanctions were based on "a lack of good faith, lack of candor, the lack of research in filing an appeal," and were awarded for all the proceedings in that case.
 
 
 25
 Although we affirm the district court's grant of summary judgment, we believe the district court abused its discretion in awarding sanctions based on the filing of what it perceived to be a frivolous complaint. The complaint may have failed, but in our judgment it was not frivolous. The district court did not reveal, either orally or in writing, its analysis of the applicability of the doctrine of res judicata. Thus, we have performed this analysis ourselves. Having done so, we conclude that the award of sanctions on this ground was improper.
 
 
 26
 As to the filing by Attorney Edmunds of the motion aimed at preventing the district court from invoking sanctions based on a lack of jurisdiction, however, we agree with the district court that this motion was both unjustified and disruptive--even though we disapprove of the district court's description of it as "a big crock."
 
 
 27
 Under the circumstances, we reduce the award of sanctions to the amount of $1,000.00. This amount shall remain payable by the parties so named by the district court.
 
 
 28
 AFFIRMED IN PART, REVERSED IN PART. The parties shall bear their own costs of this appeal.
 
 
 29
 Judge Reinhardt would reverse the sanctions in their entirety.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.Rule 36-3
 
 
 [1]
 We are unable to ascertain from the record the correct spelling of this name