For the foregoing reasons, the Court will grant respondent's motion for summary judgment.

Accordingly, following *de novo* review,

**IT IS HEREBY ORDERED** that respondents' motion for summary judgment is **GRANTED**. [Doc. 9]

**IT IS FURTHER ORDERED** that petitioner's claims are DISMISSED with prejudice.

**IT IS FURTHER ORDERED** that respondents are awarded the costs of this action to be paid by petitioner, On Target Sporting Goods, Inc.

An appropriate order of dismissal will accompany this memorandum and order.

Edward G. DURNEY, Plaintiff,

v.

**WAVECREST LABORATORIES, LLC, Defendant.**

No. C–05–3166 EMC.

United States District Court, N.D. California.

Dec. 9, 2005.

Edward G. Durney, Millbrae, CA, for Defendant.

Kalama M. Lui–Kwan, Latham & Watkins LLP, Richard B. Ulmer, Latham & Watkins LLP, Menlo Park, CA, for Defendant.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT IN PART AND DENYING DEFENDANTS' MOTION TO DISMISS IN PART**

CHEN, United States Magistrate Judge.

Pending before the Court is Defendant's motion to dismiss all claims based on failure to state a claim. Having considered the parties' briefs and accompanying submissions as well as the argument of counsel, the Court hereby GRANTS the motion to dismiss in part and DENIES the motion to dismiss in part.

### I. FACTUAL & PROCEDURAL BACKGROUND

In his First Amended Complaint ("FAC"), Mr. Durney asserts six causes of action: quantum meruit, misappropriation of ideas and work product, copyright infringement, correction of patent inventorship, causing harm to jointly-owned property, and breach of agreement.

Mr. Durney's causes of action are based on the following factual allegations: he was hired by WaveCrest to do various work, including improving its patent portfolio. See FAC ¶ 5. Mr. Durney provided services to WaveCrest between March 2002 and December 2003. See id. WaveCrest paid Mr. Durney more than $130,000 for services provided (and out-of-pocket expenses incurred) during the last six months of 2002. See id. ¶ 6. However, it did not pay Mr. Durney for all of his work (or expenses). See id. Altogether, Mr. Durney spent at least 1,200 hours during the 2002–2003 timeframe for which he was not compensated. See id. ¶ 7. WaveCrest claimed that it did not have to pay Mr. Durney because of, inter alia, malpractice, breach of contract, shoddy work, inexcusable delay, and incompetence. See id. ¶ 9.

As noted above, some of the work that Mr. Durney did for WaveCrest involved improving its patent portfolio. See id. ¶¶ 5, 10. Based on Mr. Durney's ideas or work product, WaveCrest filed at least six patent applications, both in the United States and abroad. See id. ¶ 11. By doing so, WaveCrest infringed copyrights in two works that Mr. Durney had registered

with the Copyright Office. *See id.* ¶¶ 13–20.

On November 24, 2004, Mr. Durney filed suit against WaveCrest for breach of contract and unlawful conversion of property. *See id.* ¶ 29. In seeking a settlement, Mr. Durney agreed—at WaveCrest's request—to dismiss that case with prejudice. *See id.* Mr. Durney did so on January 18, 2005, before WaveCrest had to answer the complaint. *See id.*

In exchange for Mr. Durney's dismissal of the case, WaveCrest agreed to do an "internal arbitration." *See id.* ¶ 30. More specifically, "WaveCrest agreed to have one of its executives—someone acceptable to both sides—investigate the matter and make an independent recommendation based on his findings." *Id.* Both sides found WaveCrest executive Rich Schaum acceptable. *See id.* ¶ 31. However, while Mr. Schaum did spend some time looking into the matter, "he did not complete an investigation, did not make any findings, and did not make an independent recommendation based on his findings." *Id.* ¶ 31.

On October 13, 2005, Defendant WaveCrest filed a Motion to Dismiss Mr. Durney's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). WaveCrest claims that Mr. Durney's first five causes of action (quantum meruit, misappropriation of ideas and work product, copyright infringement, correction of patent inventorship, and causing harm to jointly-owned property) are barred by res judicata by Mr. Durney's January 18, 2005 dismissal with prejudice of his original lawsuit. WaveCrest also claims that these five causes of action are legally deficient. WaveCrest claims that Mr. Durney's sixth cause of action (breach of agreement) fails because he has not pleaded in his complaint that WaveCrest failed to perform and he did not allege that

he himself had satisfied his part of the agreement.

## II. DISCUSSION

Pursuant to Rule 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). For such a motion, the Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Janas v. McCracken (In re Silicon Graphics Sec. Litig.)*, 183 F.3d 970, 983 (9th Cir.1999). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Res Judicata

■■■ Defendants claim that five of Plaintiff's claims are barred by res judicata due to Plaintiff's dismissal with prejudice of his original lawsuit. "The doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." (internal quotes omitted) *Nevada v. United States*, 463 U.S. 110, 130–31, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983). The elements necessary to establish res judicata in the second action are (1) an identity of claims between the first and second actions, (2) a final judgment on the merits in the first action, and (3) privity between the parties of the first and second actions. *Hells Canyon Preservation Council v. U.S. Forest Service*, 403 F.3d 683, 686 (9th Cir.2005).

### 1. Final Judgment on the Merits

■ Mr. Durney's first argument that his claims should not be precluded by res judicata is that, in effect, he should not be precluded from bringing his claims in this second suit, because he did not have the chance to litigate his claims the first time.[1] *See* Plaintiff Durney's Reply to Defendant WaveCrest's Motion to Dismiss, at 6–9. This argument reflects a misunderstanding of the doctrine of res judicata. The test is not whether or not the claim was litigated, but whether or not there was a final judgment on the merits. *See Hells Canyon,* 403 F.3d at 686. As courts in the Ninth Circuit have held, "dismissal of [an] action with prejudice pursuant to a settlement agreement constitutes a final judgment on merits and precludes parties from reasserting the same claim in a subsequent action." *Int'l Union of Operating Eng's– Employers Construction Indus. Pension, Welfare and Trust Funds v. Karr,* 994 F.2d 1426, 1429 (9th Cir.1993) (holding that claim for accurate payments and claim for delinquent payments arose from the same transaction and therefore the second action was barred by res judicata). *See also Headwaters Inc. v. U.S. Forest Service,* 399 F.3d 1047, 1052 (9th Cir.2005) (holding that a stipulated dismissal with prejudice has res judicata effect).

As an attorney, it was Mr. Durney's responsibility to know the consequences of his original dismissal. The court in *Samuels v. Northern Telecom, Inc.,* 942 F.2d 834 (2d Cir.1991), addressed the issue of an attorney's responsibility when dismissing a case. *Samuels* was a discrimination case holding that the plaintiff was precluded from bringing a Title VII case when he had earlier dismissed a section 1981 case based on the same facts. In the prior case, he mentioned Title VII even though the court did not have jurisdiction to hear the Title VII action. *See id.* at 837. As the court admonished: "a dismissal with prejudice was a risky choice if future litigation was contemplated, since it would wipe out all claims that could have been asserted in the dismissed suit... Res judicata may not be avoided on the basis of ... an attorney's ill-considered decision to enter into an all-encompassing stipulation of withdrawal with prejudice." *Id.* That the plaintiff had not litigated the Title VII claim did not preclude res judicata.

With regard to all of the causes of action for which the other elements of res judicata are satisfied, there is a prior final judgment on the merits, as Mr. Durney dismissed his 2004 case with prejudice.

### 2. Privity of the Parties

As Mr. Durney and WaveCrest were the only parties in the 2004 case and are the only parties in this case, the privity element of res judicata is met here.

### 3. Identity of Claims

■ The predominant federal rule for testing the identity of claims is set forth in the Restatement Second of Judgments 1981, § 24; whether the claim extinguished by a first judgment "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose... What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Wright and Miller, Fed-

---

**1.** Mr. Durney asserted, in oral argument, that there is a policy interest in parties getting their day in court. However, the doctrine of res judicata reflects a countervailing policy interest in judicial efficiency and finality.

eral Practice and Procedure: Jurisdiction 2d § 4407 (2d ed.2002). The Ninth Circuit has cited several criteria for determining whether two successive lawsuits involve an identity of claims and are thus barred by res judicata: "1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, 2) whether substantially the same evidence is presented in the two actions, 3) whether the two suits involve infringement of the same right, and 4) whether the two suits arise out of the same transactional nucleus of facts." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982). The most important factor for determining whether the two suits have an identity of claims is whether the two suits arise from the same transactional nucleus of facts. *See Costantini* at 1202. *See also Int'l Union*, 994 F.2d at 1429; *Hells Canyon*, 403 F.3d at 690.

### a. Transactional Nucleus of Facts

In determining whether the same transactional nucleus of facts are involved, the courts have focused on whether the two causes of action allege the same conduct and whether the two causes of action allege conduct which is contemporaneous.

#### i. Similarity in Nature of the Underlying Conduct

In *Costantini*, a travel agent plaintiff filed successive suits, alleging that the named airlines and travel agency approval boards had conspired to monopolize trade by unfairly denying him approval for his agencies. *See Costantini*, 681 F.2d at 1200. The first suit, filed in 1975, alleged, among other things, that the named airlines had spread false allegations about the plaintiff, and was dismissed by the court in 1977. *See id.* Subsequently, through the Freedom of Information Act the plaintiff procured information of additional allega-

tions which had been made by the airlines prior to his original suit. *See id.* He filed suit again in 1980, the additional allegations being the sole grounds for his new suit. *See id.* at 1201–02. The court held that the nature of the conduct alleged in the second suit was the same; the defendants' "alleged participation in efforts to ensure the collapse of [plaintiff's] license agreement." *See id.* at 1202. The court noted that the second suit alleged different specific conduct on the part of the defendant, but reasoned that the new allegations were an "evidentiary detail" and "scarcely enough to establish that the instant lawsuit arises out of a different 'transactional nucleus of facts' than that which generated the 1975 suit." *See id.* at 1202.

In *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391 (9th Cir.1992), the plaintiffs alleged that the federal and state governments had violated the National Environmental Policy Act (NEPA) when they failed to prepare an Environmental Impact Statement (EIS) evaluating their proposed bison management plan for Yellowstone National Park. *See id.* at 1395. The plan amounted to different techniques for preserving the size of one herd at about 200 bison. *See id.* at 1395. The defendants argued that res judicata barred the plaintiffs from bringing this suit in 1990 because of the plaintiffs' 1985 suit. In the earlier suit the plaintiff alleged that the federal and state government violated NEPA by failing to prepare an EIS evaluating the government's failure to prevent the bison from leaving the protected wilderness. *See id.* at 1399. The claim was that after the bison left the park, they were often killed by state game wardens or private parties. *See id.* at 1399. The court found even though both suits sought to compel an EIS, the two claims alleged different governmental conduct. There

was not an identity of claims for res judicata purposes.[2] *See id.*

In *Hells Canyon*, 403 F.3d 683, the Forest Service relocated a trail in 1992. The trail was found to be within a prohibited wilderness. *See id.* at 685. The Hells Canyon Preservation Council (HCPC) brought suit against the Forest Service, alleging *inter alia* that the Forest Service had violated the National Environmental Policy Act (NEPA) by not filing an EIS. The NEPA claim was rejected by the court on its merits. *See id.* at 685. The HCPC subsequently documented the location of the new trail, and in 2002 filed suit, alleging that the trail violated the Wilderness Act. *See id.* The court found that the facts relevant to the original NEPA claim were that the Forest Service decided to move the trail, and did so without filing an EIS. *See id.* at 690–91. By contrast, the HCPC's 2002 claim arose out of its allegation that even after the relocation, some of the trail remained within the wilderness. *See id.* at 691. The court concluded that the two claims arose from a different transactional nucleus of facts. Because there was no identity of claims, the second case was not barred by res judicata. *See id.*

■ In the case at bar, Mr. Durney has alleged six causes of action: (1) quantum meruit for services rendered; (2) misappropriation of ideas and work product; (3) copyright infringement; (4) correction of patent inventorship; (5) causing harm to jointly owned property; and (6) breach of an agreement. The similarity of the conduct at issue in the two cases supports the conclusion that the two cases involve the same transactional nucleus of facts.

The clearest example of similar conduct is Mr. Durney's 2004 breach of contract action as compared with his current quantum meruit action. The 2004 breach of contract action alleged that a formal contract existed between the parties, that Mr. Durney fulfilled his end of the bargain, and that WaveCrest did not pay him. *See* Complaint for Breach of Contract; Unlawful Conversion of Property ("2004 Compl."), ¶¶ 4–5. His 2005 quantum meruit cause of action alleges that WaveCrest asked Mr. Durney to help them, he provided assistance, and they never paid him. FAC ¶¶ 5–9. The transaction and core facts are the same: Mr. Durney performed work for WaveCrest but did not get paid. These claims are alternative legal theories based on the same conduct. While the remedy may differ, these two claims arise from the same transactional nucleus of facts.

Mr. Durney's 2004 "unlawful conversion of property" also covers the same conduct as his 2005 claim of "misappropriation of ideas and work product," "copyright infringement," "correction of patent inventorship," and "causing harm to jointly-owned property." The elements which are necessary to prove these causes of action demonstrate the similarity of the conduct underlying allegations of each of the causes of action.

### A. *Conversion*

■ In California, the elements of a conversion cause of action are: (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages. *Hartford Financial Corp. v. Burns*, 96 Cal.App.3d 591, 158 Cal.Rptr. 169 (1979).

2. The two cases were filed against a variety of state and federal government officials, and while the court dealt with a variety of issues, including privity between the parties in the two suits and state immunity, for the purposes of this order, we consider only the court's discussion of res judicata.

### B. *Copyright Infringement*

█ In order to establish a prima facie case of copyright infringement, plaintiffs must prove five elements: (1) the originality and authorship of the compositions involved; (2) compliance with the formalities required to secure a copyright; (3) plaintiffs' ownership of the copyrights of the relevant compositions; (4) defendant's public performance of the compositions; and (5) defendant's failure to obtain permission from the plaintiffs or their representatives for such performance. *Bourne Co. v. Speeks,* 670 F.Supp. 777, 778 (E.D.Tenn.1987).

### C. *Misappropriation*

█ In regards to trade secrets, misappropriation is defined in the California Civil Code as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." California Uniform Trade Secrets Act, Cal. Civ.Code § 3426.1.[3] To prove this cause of action for a trade secret, Mr. Durney's would have to prove that (1) he possessed a trade secret (2) the defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means; and (3) the defendant's use of the trade secret is to the plaintiff's detriment. 54A. Am.Jur.2d Monopolies, Restraints of Trade, and Unfair Trade Practices § 1114.

### D. *Correction of Patent Inventorship*

█ To prove that he was co-inventor of the patents in question, he would have to prove "some quantum of collaboration" and that he made a "contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Eli Lilly and Co. v. Aradigm Corp.,* 376 F.3d 1352, 1359 (Fed. Cir.2004). To establish inventorship status, Mr. Durney must show legal entitlement to the work he contributed.

### E. *Causing Harm to Jointly Owned Property*

Mr. Durney's "causing harm to jointly-owned property" cause of action would involve proof that he had a proprietary interest in the property, and that WaveCrest engaged in conduct to wrongfully dispose, or destroy the property. *See, e.g., Brown v. Republic Productions,* 26 Cal.2d 867, 161 P.2d 796 (1945) (in an action for infringement, plagiarism, and conversion or destruction of a musical composition, whether or not the defendant's actions amounted to "destruction" of the musical composition held to be a relevant inquiry).

Each of these allegations implicate the same core conduct. Each claim entails an allegation that Mr. Durney performed work to which he had a proprietary interest, that WaveCrest unlawfully and without his authorization used or converted that work for their own use in filing the patent applications. To be sure, there are some different elements peculiar to each claim. For instance, his first suit alleges that WaveCrest's filing of the patent applications was wrong because they did not pay him, whereas his second suit alleges that this conduct was wrong because they violated his copyright on the work. However, each of the cases implicate the same transactional nucleus of facts, and therefore have an identity of claims, supporting a dismissal of the second suit on the grounds of res judicata.[4]

---

**3.** This Court will analogize Mr. Durney's "misappropriation of ideas and work product" to a claim for "misappropriation of a trade secret."

**4.** Mr. Durney conceded at oral argument that he would be more likely to agree that res judicata applied if the first case had actually been litigated. He implicitly recognizes that the two claims are substantially identical. As previously noted, res judicata analysis does

The analysis of whether two suits involve an identity of claims is a pragmatic determination and a matter of degree. Here the core transactional facts overlap.

### ii. *Contemporaneity*

Ninth Circuit case law dealing with res judicata also makes it clear that the temporal relationship of the two courses of conduct at issue is taken into account in determining whether they are transactionally related or not. For instance, in *Costantini*, while the subsequent allegations were based on new evidence of alleged wrongdoing, that wrongdoing was contemporaneous to the wrongdoing alleged in the prior lawsuit and was barred by res judicata. *Costantini*, 681 F.2d at 1200. In *Hells Canyon*, on the other hand, part of the reason the two claims were different was because they were temporally disconnected: the 1992 NEPA claim had to do with what the Forest Service did leading up to the change of the trails location, while the 2002 Wilderness Act claim had to do with facts in existence after the movement of the trail. *Hells Canyon*, 403 F.3d at 690–91.

*Frank v. United Airlines, Inc.*, 216 F.3d 845, (9th Cir.2000), illustrates the temporal distinction between subsequent claims. Plaintiffs brought suit in 1979 against the airline regarding their maximum weight requirements at that time. *See id.* at 850. The 1979 case ended with a post-judgment settlement. The airline agreed to change the weight requirements. *See id.* In

1992, plaintiffs sued the airline challenging maximum weight requirements. The Ninth Circuit held that the subsequent suit was not barred by res judicata, because: (1) "A claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim," and (2) because the airline changed its weight policy in 1980, the suit arose from a different maximum weight requirement than the 1979 suit and therefore arose from a different transactional nucleus of facts. *See id.* The wrongdoing, even though part of an alleged course of conduct, was temporally distinct.

All of Mr. Durney's claims allege conduct which occurred contemporaneously. For instance, Mr. Durney's cause of action entitled "quantum meruit" alleges that he was not paid for his consulting services from March 2002 to December 2003, and his "breach of contract" claim from 2004 covers WaveCrest's failure to pay him for the same consulting contract ending on the same date.[5] Likewise, the conduct underlying Mr. Durney's 2004 "unlawful conversion of property" as well as his 2005 "misappropriation of ideas and work product," "copyright infringement," "causing harm to jointly-owned property," and "correction of patent inventorship" claims is also contemporaneous.[6] The ideas, work, and work product at issue in each of these claims was generated by Mr. Durney for WaveCrest during the years of 2002 and 2003. In each case, it is the filing of the patents

---

turn on whether the first case was actually litigated. *See, e.g. Int'l Union*, 994 F.2d at 1429; *Headwaters*, 399 F.3d at 1052; *Samuels*, 942 F.2d at 837.

**5.** The fact that his original claim covered Jan. 1, 2003—Dec. 31, 2003 and his new claim covers March 2002—Dec.2003 is of no consequence, as Mr. Durney could have made the claim for the period between March 2002 and January 2003 in his original claim.

**6.** While it is not clear when the patents at issue in these claims are alleged to have been filed by WaveCrest, one of them, "Adaptive Electric Motors and Generators Providing Improved Performance and Efficiency," is alleged to have been filed on February 6, 2003. 2005 Compl. ¶ 18. The other five which are germane to this claim were filed "during and after December 2003." FAC ¶ 24.

based on Mr. Durney's work by Wave-Crest that constitutes the alleged wrong-doing.

In addition to the transactional nucleus of facts test, an analysis of the other three *Costantini* criteria supports the conclusion that Mr. Durney's claims concerning contemporaneous conduct are barred by res judicata.

 b. *Whether Rights or Interests Established in the Prior Judgment Would be Destroyed or Impaired by Prosecution of the Second Action*

In *Costantini*, the court noted that a second suit, if allowed to continue, could impair the defendant's freedom from liability as established by the prior suit. *Costantini*, 681 F.2d at 1202. Here, the case at bar would impair WaveCrest's freedom from litigation established by Mr. Durney's dismissal with prejudice of the first suit.

 c. *Whether Substantially the Same Evidence is Presented in the Two Actions*

Whether the two suits involve proof of the same evidence is closely related to whether the nature of the underlying conduct is the same in each case. In *Costantini*, for example, since both suits alleged the spreading of falsehoods about the plaintiff by the defendant, the court reasoned that the evidence in both of the suits would be "virtually identical," aside from the evidence which the plaintiff subsequently found of the defendant allegedly spreading one additional false rumor. *See Costantini*, 681 F.2d 1199.

Each of Mr. Durney's 2005 claims may involve the proof of slightly different elements than his 2004 claims. However, since they involve the same core conduct, they will require proof of substantially similar evidence. For instance, while his 2005 quantum meruit claim would not require proof of the validity of the contract between Mr. Durney and WaveCrest, which would have been required for his 2004 breach of contract claim, both cases involve proof of substantially the same evidence: that Mr. Durney performed services of value provided to WaveCrest in 2002–2003 but was not paid therefor. To the extent WaveCrest raises in defense claims of shoddiness, incompetence, and inexcusable delay, those contentions will be relevant to both claims. For each of his 2005 claims alleging breach of a proprietary interest, Mr. Durney may have slightly different elements to prove than what would have been required to prove in his 2004 conversion claim. For instance, his copyright infringement claim involves the additional proof of ownership of a copyright in the material and his correction of patent ownership claim requires proof that his contribution to the patent applications was "not insignificant." However, it would be substantially the same evidence which he would be required to prove in each of those actions: Mr. Durney would have to prove that he had a propriety interest in the material, either because he worked on it or conceived of it, and that WaveCrest violated that proprietary interest by wrongfully filing unauthorized patents.

 d. *Whether the Two Suits Involve Infringement of the Same Right*

In *Costantini*, the court noted that the second suit sought damages for violation of the plaintiff's right to advantageous business relations, just as the earlier suit had. *See Costantini*, 681 F.2d at 1202. In *International Union*, the plaintiff argued that its second suit should not be barred by res judicata, as the second action for accurate payments involved infringement of a different right than the prior action to collect delinquent payments. *Int'l Union*, 994 F.2d at 1430. The court disagreed, reasoning that "the single right" at issue

was the right to receive "proper" payments; payments which were "both accurately computed and timely paid." *See id.* Some of the claims in Mr. Durney's 2005 complaint involve violation of the same right as that alleged to have been violated in his 2004 suit. For instance, his quantum meruit claim alleges that his right to payment for services rendered was violated. A similar right is at issue in his 2004 breach of contract cause of action. His "misappropriation," "copyright infringement," "causing harm to jointly-owned property," and "correction to patent inventorship" claims all implicate Mr. Durney's possessory right over the work that he did for WaveCrest in 2002 and 2003, the same right at the core of his 2004 "conversion" claim. While it may be argued that different legal rights might be involved (*e.g.* right to intellectual property protected by copyright versus proprietary interest in the intellectual property), at bottom, Mr. Durney's general ownership interest in the work is what is at issue.

B. *Failure of Mr. Durney's Complaint to State a Claim Upon Which Relief Can be Granted*

1. *First Through Fifth Causes of Action*

Because Mr. Durney's first five causes of action are barred by res judicata, we do not need to reach the question of whether or not they are otherwise legally deficient.

2. *Sixth Cause of Action for Breach of Agreement*

 WaveCrest claims that Mr. Durney's breach of agreement cause of action fails to state a claim, because he has not alleged (1) that he upheld his end of the agreement, nor (2) that WaveCrest breached its end of the agreement. In fact, Mr. Durney's complaint alleges as follows: Mr.

Durney agreed to dismiss the original case with prejudice in exchange for Wave-Crest's agreement to have a WaveCrest executive acceptable to both sides investigate the matter and make an independent recommendation based on his findings. *See* FAC ¶¶ 29–31. He alleged that he met his end of the agreement by dismissing the suit on January 18, 2005. *See id.* He also alleged that WaveCrest did not meet their end of the agreement because their appointed arbitrator did not make a complete investigation, did not make any findings, and did not make an independent recommendation based on his findings. *See id.* WaveCrest's argument is without merit, as Mr. Durney's allegations, if true, would support a breach of agreement cause of action.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss as to Mr. Durney's quantum meruit, misappropriation of ideas and work product, copyright infringement, correction of patent inventorship, and causing harm to jointly-owned property causes of action, and DENIES Defendant's motion to dismiss as to Mr. Durney's breach of agreement cause of action.

IT IS SO ORDERED.