**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AVRIL ADAMS,
        *Plaintiff-Appellant,*

v.

STATE OF CALIFORNIA
DEPARTMENT OF HEALTH SERVICES,
a public entity; DONNATA
MORELAND; OAKTREE
INVESTIGATIONS, a business entity
and consumer reporting agency;
LAURENCE A. CORBIN, individually
as an investigator for Oak Tree
Investigations; PATRICIA ECHARD;
PAULETTE BAKER; PATRICK
KENNELLY, individually and as a
supervisor; LAVONNE COEN,
        *Defendants-Appellees.*

No. 04-56880

D.C. No.
CV-04-07313-GAF

ORDER
WITHDRAWING
OPINION AND
OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Submitted December 5, 2006*
Pasadena, California

Filed May 7, 2007

Before: Harry Pregerson, David R. Thompson, and
Richard C. Tallman, Circuit Judges.

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

Opinion by Judge Thompson

**COUNSEL**

B. Kwaku Duren, Los Angeles, California, for the appellant.

Martin H. Milas, Deputy Attorney General, Los Angeles, California, for the appellees.

**ORDER**

The plaintiff-appellant's petition for panel rehearing is GRANTED. The opinion filed here on February 13, 2007, and published at ___ F.3d ___, 2007 WL 446582 is WITHDRAWN.

A new opinion, replacing the withdrawn opinion, is filed with this Order.

The parties are not precluded from filing further petitions for panel and en banc rehearing.

**OPINION**

THOMPSON, Senior Circuit Judge:

Appellant Avril Adams appeals the district court's dismissal with prejudice of her complaint against Appellees the California Department of Health Services ("CDHS"); CDHS employees Donnata Moreland, La Vonne Coen, Patricia Echard, Paulette Baker, and Patrick Kennelly; and Oaktree Investigations and its employee, Laurence Corbin. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's dismissal of Adams's complaint.

## I. BACKGROUND

In January 2001, Adams applied for a food and drug inspector ("FDI") position with CDHS. Food and drug inspectors are peace officers and carry firearms; investigate violations; make arrests; and travel to food storage, processing facilities, and farms. Adams was offered the position she sought, but her actual hiring was conditioned upon her successful completion of a background investigation, including medical and psychological evaluations.

Adams passed the psychological evaluation, but Dr. Stephen G. Weyers notified her that he had recommended restrictions on her ability to perform activities that required maximal exertion and balance. CDHS then advised Adams it was unable to accommodate her medical restrictions, and it withdrew the conditional job offer. Thereafter, Adams took a new treadmill stress test, and Dr. Weyers medically approved her without limitation for the food and drug investigator position.

CDHS then withdrew its medical disqualification of Adams and notified her it would resume her selection process. Adams objected to further investigation. Thereafter, on March 14, 2003, CDHS sent Adams a letter notifying her that it had rescinded its conditional offer of employment. Four days

later, on March 18, 2003, the State Personnel Board ("SPB") ruled on Adams's appeal of Dr. Weyers's decision to disqualify her for medical reasons. Because Dr. Weyers had subsequently approved her, the SPB granted Adams's appeal and advised her she would be appointed to the FDI position within 120 days unless she was unsuccessful in the balance of the selection process.

According to Adams, CDHS then engaged Oaktree Investigations to interview CDHS employees about Adams's behavior during the selection process. Laurence Corbin of Oaktree Investigations interviewed CDHS employees Echard, Kennelly, Moreland, Coen, and Baker on March 27, 2003, and memorialized the results of the interviews in a report dated April 2, 2003.

On April 1, 2003, Adams filed a petition for rehearing with the SPB, arguing that she should be appointed to the FDI position immediately because the selection process ended when she was deemed medically qualified. CDHS filed a response to Adams's petition on May 13, 2003, stating that it withdrew Adams's conditional offer of employment the second time because, during the completion of the investigation process, questions arose regarding Adams's suitability as a peace officer. The response detailed Adams's behavior during the selection process, which behavior included challenging a CDHS employee to a race during the SPB hearing; making numerous phone calls; and sending emails and letters to CDHS employees in which Adams's tone was "rude," "discourteous," "abrupt," "angry," and "challenging in a demeaning way." The response concluded that Adams did not possess the interpersonal skills, sound judgment, or the ability to follow directions necessary for being an effective peace officer. The SPB denied Adams's petition for rehearing on June 17, 2003.

Adams filed a complaint in state court on November 10, 2003, naming CDHS, Coen, Moreland, and Dr. Weyers as

defendants. Adams asserted claims for (1) retaliation in violation of 42 U.S.C. § 1983; (2) violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, and the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12900-12996; (3) denial of due process and civil rights in violation of 42 U.S.C. §§ 1981, 1983, 1985; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) negligence; and (7) declaratory relief. Adams sought damages and a declaration from the court that CDHS's withdrawal of the conditional offer of employment was unlawful.

Adams's complaint also detailed the facts behind the reopening of the background investigation to support her claims for negligence, violations of 42 U.S.C. §§ 1981, 1983, 1985, breach of contract, and declaratory relief. In her complaint, Adams did not allege separate claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x., or state privacy law, although she alleged that the act of resuming the background investigation was prejudicial, illegal, unreasonable, discriminatory, retaliatory, and arguably illegal in violation of the FCRA and due process.

Adams's action was removed to federal court on December 8, 2003. *Adams v. Cal. Dep't of Health Servs.*, No. CV-03-8920 (C.D. Cal. filed Dec. 8, 2003). The district court issued a scheduling order setting March 26, 2004, as the deadline for filing motions to amend the complaint or add additional parties.

On July 1, 2004, well past the March 26, 2004 deadline set in the scheduling order, Adams filed a motion for leave to amend her complaint. Adams wanted to add as defendants Oaktree Investigations and Oaktree investigator Corbin, as well as CDHS employees Echard, Baker, and Kennelly. In her proposed amended complaint she alleged four additional claims: (1) violation of the FCRA; (2) violation of the California Investigative Consumer Reporting Agencies Act

("ICRA"), Cal. Civ. Code §§ 1786-1786.60; (3) infringement of her civil and constitutional rights in violation of 42 U.S.C. §§ 1981, 1983, 1985; and (4) declaratory relief.

Finding that Adams failed to demonstrate good cause for the undue delay in seeking leave to amend, and that granting her motion to amend would prejudice the defendants already named in her complaint, the district court denied Adams's motion as untimely. The action then proceeded to trial, and a jury found in favor of the defendants. Adams appealed the denial of her motion for leave to amend, among other issues, to our court. In a memorandum disposition, we affirmed the district court's decisions and the judgment in that first case. *Adams v. State of Cal. Dep't of Health Servs.*, No. 05-56857, 2007 WL 464741 (9th Cir. Feb. 7, 2007).

On September 2, 2004, after the district court denied her motion for leave to amend in the first case, Adams filed the complaint in this present case. In her complaint in this case, Adams set forth the four additional claims she had sought to add by her previously denied motion for leave to amend her complaint in the first case. In the present case, the district court determined that Adams's newly filed complaint was duplicative of the complaint she had previously filed in the other case, and the court dismissed the new complaint with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

District courts retain broad discretion to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, default or dismissal." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam); *see also Link v. Wabash R.R.*, 370 U.S. 626, 629-30 (1962). We review for abuse of discretion the district court's dismissal with prejudice of Adams's complaint. After weighing the equities of the case, the district court may exercise its discretion to dismiss

a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000); *Walton v. Eaton Corp.*, 563 F.2d 66, 70-71 (3d Cir. 1977) (en banc), *cited with approval in Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th Cir. 1997).

## III.  DISCUSSION

**[1]** Adams filed her present complaint in an attempt to avoid the consequences of her own delay and to circumvent the district court's denial of her untimely motion for leave to amend her first complaint. However, as the Tenth Circuit stated in *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, "the fact that plaintiff was denied leave to amend does not give h[er] the right to file a second lawsuit based on the same facts." 296 F.3d 982, 989 (10th Cir. 2002) (internal quotation marks omitted). Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton*, 563 F.2d at 70; *see also Curtis*, 226 F.3d at 138-39; *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223-24 (7th Cir. 1993); *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985); *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980); *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st Cir. 1947).

We find that Adams's later-filed complaint is duplicative of her earlier-filed complaint and, further, that given the circumstances of this case, the district court did not abuse its discretion in dismissing Adams's later-filed complaint with prejudice.[1]

---

[1]We note that we are affirming the district court's dismissal on the basis that the second action was duplicative of the first, and *not* on the basis that the district court had the discretion to dismiss the second action as a sanction for failing to comply with the Rule 16 scheduling order issued in the

*A.   Duplicative Complaint*

To determine whether a suit is duplicative, we borrow from the test for claim preclusion. As the Supreme Court stated in *United States v. The Haytian Republic*, "the true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." 154 U.S. 118, 124 (1894); *see also Hartsel Springs Ranch*, 296 F.3d at 987 n.1 ("[I]n the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion."); *Curtis*, 226 F.3d at 139-40 ("[T]he normal claim preclusion analysis applies and the court must assess whether the second suit raises issues that should have been brought in the first."); *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998) (per curiam) (referring to the doctrine against claim-splitting as "the 'other action pending' facet of the *res judicata* doctrine").

**[2]** Thus, in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same. *See The Haytian Republic*, 154 U.S. at 124 ("There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the

first action. *Cf. Atchinson, Topeka, & Santa Fe Ry. Co. v. Hercules, Inc.*, 146 F.3d 1071, 1073-74 (9th Cir. 1998) (holding that district court abused its discretion in dismissing a second-filed action with prejudice where plaintiff's claims against a third-party defendant were permissive, not mandatory, under Federal Rule of Civil Procedure 14). Unlike the plaintiff in *Atchinson*, Adams was required to bring all of her claims against the defendants and their privies arising from a single cause of action in one suit. Thus, because the filing of a duplicative complaint was abusive, our affirmance of the district court's dismissal does not contravene the rule established in *Atchinson* that "district courts have inherent power to control their dockets, but not when its exercise would nullify the procedural choices reserved to parties under the federal rules." *Id.* at 1074.

same relief prayed for; the relief must be founded upon the same facts, and the . . . essential basis, of the relief sought must be the same." (internal quotation marks omitted)); *Curtis*, 226 F.3d at 140 (holding that the trial court did not abuse its discretion in dismissing "*Curtis II* claims arising out of the same events as those alleged in *Curtis I*," which claims "would have been heard if plaintiffs had timely raised them"); *Serlin*, 3 F.3d at 223 ("[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." (internal quotation marks omitted)).

### 1.   Same Causes of Action

**[3]** We examine first whether the causes of action in Adams's two suits are identical. To ascertain whether successive causes of action are the same, we use the transaction test, developed in the context of claim preclusion. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (citing Restatement (Second) of Judgments § 24(1) (1982)). In applying the transaction test, we examine four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). "The last of these criteria is the most important." *Id.* at 1202.

**[4]** Here, it is clear that the two actions share a common transactional nucleus of facts. The first complaint detailed the

factual allegations surrounding the reopening of Adams's background investigation and used those allegations to support claims under the legal theories of negligence; violations of 42 U.S.C. §§ 1981, 1983, 1985; breach of contract; and declaratory relief. Adams's first complaint specifically cited as support for her claims against Coen, Moreland, and Dr. Weyers under 42 U.S.C. §§ 1981, 1983, 1985, the same negative comments from CDHS employees during the selection process that she used to support her claims in the present action. The present complaint differs only in that it identifies the CDHS employees who made the negative comments, names those CDHS employees and Corbin and Oaktree Investigations as defendants, and advances two new legal theories of recovery under the FCRA and the ICRA. The two other claims — one under 42 U.S.C. §§ 1981, 1983, 1985 and one seeking declaratory relief — are identical to those asserted in the first complaint. As Adams herself concedes, the claims in both complaints relate to the same set of facts and form a convenient trial unit because they "disclose[ ] a cohesive narrative" of Adams's relationship with CDHS and the disputed withdrawal of the conditional job offer after the continuation of the background investigation. *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

**[5]** In addition, any judgment in the present action necessarily would destroy or impair rights and interests established by the judgment in the first action. As Adams alleges in her present complaint, both the FCRA and the ICRA require consent to and disclosure of an investigation. *See* 15 U.S.C. § 1681b(b); Cal. Civil Code §§ 1786.10-.12. However, the central issues raised in the present complaint surrounding the legality of the reopening of Adams's background investigation — whether the selection process was complete after Adams was medically cleared, whether CDHS lost the right to resume the background investigation when it rescinded for the first time Adams's conditional offer of employment, or whether the background investigation had never been completed and Adams's consent to the investigation remained

valid — were squarely raised and argued by Adams in her claim for declaratory relief in the first complaint.

Furthermore, although Adams argues that the additional report she uncovered on January 17, 2004, written by Oaktree Investigations and containing affidavits from Kennelly, Echard, and Baker, constitutes "new" evidence, the report cannot be said to be "new" in any sense because, as Adams states in her complaint, it was dated April 3, 2003 and was provided to Adams by CDHS during discovery in the first action. In addition, the report is merely cumulative of CDHS's response of May 13, 2003 to Adams's petition for rehearing before the SPB, which explained that CDHS had withdrawn Adams's conditional offer of employment because of her behavior in the balance of the selection process. Adams in her first complaint quotes liberally from CDHS's response as factual support for her claims. Thus, the additional evidentiary detail surrounding Echard's and Baker's comments in the Oaktree Investigations report "is scarcely enough to establish that the instant lawsuit arises out of a different 'transactional nucleus of facts' than that which generated the [first] suit." *Constantini*, 681 F.2d at 1202; *cf. Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) ("The fact that some different evidence may be presented in this action . . . does not defeat the bar of res judicata.").

In addition, the key evidence presented during trial in the first action regarding Adams's claim of retaliation was the testimony of CDHS employees Moreland and Coen concerning Adams's behavior during the selection process. Kennelly, Echard, Baker, and Corbin all submitted declarations in the first action regarding the information gathered during the reopened background investigation in support of CDHS's motion for summary judgment. As the district court stated in its order denying Adams's motion for a new trial in the first action, "[t]his case largely turned on the jury's assessment of

the credibility of the defendants, who explained why they determined not to finalize their conditional offer of employment to [Adams]."

[6] Finally, although the FCRA and the ICRA establish distinct rights enforceable by litigants, this factor alone does not differentiate the causes of action. *Cf. Derish v. San Mateo-Burlingame Bd. of Realtors*, 724 F.2d 1347, 1349 (9th Cir. 1983), *overruling on other grounds recognized by Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1437 (9th Cir. 1985). Indeed, in the claim preclusion context, the most significant factor is that the causes of action arise from a common transactional nucleus of facts. *See, e.g., Western Sys.*, 958 F.2d at 871; *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987); *Constantini*, 681 F.2d at 1201. Moreover, Adams seeks substantially the same relief in both actions — compensatory, exemplary, and punitive damages for the reopening of the background investigation and the withdrawal of her conditional offer of employment, allegedly in violation of her statutory and constitutional rights, and a declaratory judgment that CDHS unlawfully reopened her background investigation and withdrew her conditional offer of employment.

[7] It is clear that the claims in Adams's present complaint arise out of the same transactional nucleus of facts asserted in her first action and that rights established by the judgment in the first action would be destroyed or impaired by a judgment in the present action. It is also plain that substantially the same evidence was and would be presented in both actions. Thus, under the *Costantini* factors, we conclude that the two suits involve the same cause of action.

### 2.   *Same Parties or Privies*

[8] While Adams's present complaint names five additional defendants, these new defendants are in privity with CDHS, because CDHS can be said to have "virtually represented" the new defendants in the first action. *See Kourtis v. Cameron*,

419 F.3d 989, 996 (9th Cir. 2005). Although the concept of privity traditionally applied to a narrow class of relationships in which "a person [is] so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved," we have expanded the concept to include a broader array of relationships which fit under the title of "virtual representation." *Id.* (internal quotation marks omitted). The necessary elements of virtual representation are an identity of interests and adequate representation. *Id.* Additional features of a virtual representation relationship include " 'a close relationship, substantial participation, and tactical maneuvering.' " *Id.* (quoting *Irwin v. Mascott*, 370 F.3d 924, 930 (9th Cir. 2004)).

**[9]** Here, three of the new defendants — Patricia Echard, Paulette Baker, and Patrick Kennelly — were employees of CDHS at the time of the events described in both of Adams's complaints and thus had a close relationship with both CDHS and the CDHS employees named as defendants in the first complaint. *See Irwin*, 370 F.3d at 930-31 (finding senior corporate officer virtually represented by his corporation). In addition, all three participated in the first action by submitting in support of CDHS's motion for summary judgment declarations regarding their participation in Adams's background investigation. Moreover, the interests of the three new employee-defendants are aligned with CDHS because CDHS's liability was predicated largely upon a finding of wrongdoing by its employees.

Furthermore, although the last two new defendants, Laurence Corbin and Oaktree Investigations, are not employees of CDHS, they maintained a close relationship with CDHS as agents hired to conduct the background investigation and possessed an identity of interest with CDHS. Corbin and Oaktree Investigations also participated in the first action by submitting declarations in support of CDHS's motion for summary judgment.

**[10]** Finally, CDHS adequately represented the five new defendants named in the present action and Adams makes no allegations to the contrary. CDHS consistently maintained that the reopening of the background investigation and the withdrawal of Adams's job offer were legal and proper under the circumstances and that its employees and agents acted lawfully. No conflicts central to the issues in this litigation exist between CDHS and the five new defendants. *Cf. Kourtis*, 419 F.3d at 998 (concluding no virtual representation existed where an agency relationship existed, but the interests of the parties were adverse).

## B.   No Abuse of Discretion

Although the district court alternatively could have opted to dismiss Adams's later-filed complaint without prejudice, to consolidate the two actions, or to stay or enjoin proceedings, under the circumstances of this case, the district court did not abuse its discretion in electing to dismiss the second action with prejudice.[2] *Cf. Kerotest Mfg. Co. v. C-O-Two Fire Equip.*

---

[2]We recognize that in some circumstances a dismissal with prejudice of a later-filed action may act to bar an earlier-filed action. *See, e.g., Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 593 (9th Cir. 1985) ("Even without a determination which is literally on the merits, a denial with prejudice *may* be a final judgment with a res judicata effect *as long as* the result is not unfair." (emphasis added)). However, according *res judicata* effect to the dismissal with prejudice of the second suit would be error in this case because Adams would have been deprived of a full and fair opportunity to litigate her first action. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480-81 (1982) ("the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue"); *Clements v. Airport Auth.*, 69 F.3d 321, 328 (9th Cir. 1995) ("[W]e do not give preclusive effect to judgments rendered in proceedings that fail to comply with the minimum standards of due process. In other words, the party against whom preclusion is urged must have had a 'full and fair opportunity' to litigate his claim."). In any case, the issue is moot as the defendants here never sought to assert *res judicata* as a defense in the first action. *See* Fed. R. Civ. P. 8(c) (*res judicata* is affirmative defense); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1321 (9th Cir. 1998) ("Res judicata is a waivable defense.").

*Co.*, 342 U.S. 180, 183 (1952) ("Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems."). In a situation such as here, where one district court had duplicative suits contemporaneously pending on its docket, we conclude, as did the Supreme Court in an analogous situation, that "[n]ecessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower court[ ]." *Id.* at 183-84; *see also id.* at 184 ("Even if we had more doubts than we do about the analysis made by the Court of Appeals, we would not feel justified in displacing its judgment with ours.").

   **[11]** Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the "comprehensive disposition of litigation." *Id.* at 183. In dismissing the duplicative suit with prejudice, the district court acted to protect the parties from vexatious and expensive litigation and to serve the societal interest in bringing an end to disputes. *Cf. Allen v. McCurry*, 449 U.S. 90, 94 (1980) (*res judicata* relieves parties of cost of multiple lawsuits, conserves judicial resources, and encourages reliance on adjudication); *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (*res judicata* "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes"); 18 Moore's Federal Practice ¶ 131.12 (3d ed. 1999).

   While we might have found an abuse of discretion had the claims in Adams's second suit been based on events occurring subsequent to the filing of her complaint in the first action, that is not the case here. *Cf. Curtis*, 226 F.3d at 139-40 (reversing the district court's dismissal of claims in the second action arising out of events occurring subsequent to the filing of complaint in the first action). To the contrary, Adams had a full and fair opportunity to raise and litigate in her first action the claims she now asserts in this action. *Cf. Parklane*

*Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979) ("[T]he requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." (internal quotation marks omitted)); *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 458 (9th Cir. 1980) ("The question [before applying *res judicata* to bar the second suit] is . . . whether [plaintiff] had a fair opportunity to litigate that claim before a competent court prior to bringing it to the court below.").

The allegedly illegal background investigation conducted by Oaktree Investigations occurred in March 2003, eight months before Adams filed her first action in state court in November 2003. In addition, the April 2003 Oaktree Investigations report upon which Adams bases her claims under the FCRA and the ICRA was made available to Adams as part of the discovery materials provided by CDHS. Adams herself admits that she uncovered this report on January 17, 2004, more than two months prior to the deadline in the first action for amending the complaint.

Moreover, it is clear that Adams had knowledge of the factual basis undergirding her FCRA and ICRA claims when she filed the complaint in the first action. Adams's petition for rehearing to the SPB squarely raised the issue of whether CDHS was permitted to resume its background investigation of her after the medical disqualification was withdrawn. In addition, the facts surrounding the allegedly illegal background investigation were laid out in CDHS's response of May 2003 to Adam's petition for rehearing before the SPB; CDHS used the information gleaned from the March 2003 investigation as additional support for its withdrawal of Adams's conditional offer of employment. Significantly, Adams in her first complaint outlined the facts gleaned from the reopened background investigation and posited that the reopening of the investigation was "arguably illegal based upon the Fair Credit Reporting Act."

**[12]** Adams was required to bring at one time all of the claims against a party or privies relating to the same transaction or event. *See N. Assur. Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000); *Nilsen v. City of Moss Point*, 701 F.2d 556, 564 (5th Cir. 1983) (en banc); Restatement (Second) of Judgments § 25, cmt. b (1982) ("It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late.").

**[13]** The district court acted within its discretion in dismissing Adams's duplicative complaint with prejudice and preventing her from "fragment[ing] a single cause of action and [ ] litigat[ing] piecemeal the issues which could have been resolved in one action." *Flynn v. State Bd. of Chiropractic Exam'rs*, 418 F.2d 668, 668 (9th Cir. 1969) (per curiam).

**AFFIRMED**.