688 F.Supp.2d 1001 (2010)
CONSOLIDATED SALMON CASES.
San Luis & Delta-Mendota Water Authority, et al.
v.
Locke, et al.
Stockton East Water District, et al.
v.
NOAA, et al.
State Water Contractors
v.
Locke, et al.
Kern County Water Agency, et al.
v.
United States Department of Commerce, et al.
Oakdale Irrigation District, et al.
v.
United States Department of Commerce, et al.
Metropolitan Water District of California
v.
National Marine Fisheries Service, et al.
No. 1:09-CV-01053 OWW DLB.
United States District Court, E.D. California.
January 12, 2010.
*1003 Daniel Joseph O'Hanlon, Hanspeter Walter, K. Eric Adair, Rebecca Dell Sheehan, Kronick, Moskovitz, Tiedemann & Girard, David A. Diepenbrock, Jon David Rubin, Jonathan R. Marz, Eileen M. Diepenbrock, Diepenbrock Harrison, Linus Serafeim Masouredis, Metropolitan Water District of Southern California, Sacramento, CA, Alexis Keane Galbraith, Jeanne M. Zolezzi, Karna E. Harrigfeld, Jennifer L. Spaletta, Herum Crabtree, Stockton, CA, Audrey M. Huang, Paul S. Weiland, Nossaman LLP, Irvine, CA, Christopher J. Carr, William M. Sloan, Edgar B. Washburn, Morrison and Foerster LLP, San Francisco, CA, Tim P. O'Laughlin, William C Paris, III, O'Laughlin & Paris, LLP, Chico, CA, Amelia Minaberrigarai, Bakersfield, CA, Gregory K. Wilkinson, Steven M. Anderson, Best Best & Krieger, LLP, Riverside, CA, for Plaintiffs.
Clifford Thomas Lee, Daniel S. Harris, Michael M. Edson, California Attorney General's Office, Department of Justice, San Francisco, CA, for Intervenor Plaintiff.
Bradley H. Oliphant, US Department of Justice, Env. & Natural Resources Division, Washington, DC, Charles Ray Shockey, United States Department of Justice, Sacramento, CA, for Defendant.
Erin Marie Tobin, Earthjustice, Michael Ramsey Sherwood, Earthjustice Legal Defense Fund Incorporated, Oakland, CA, Katherine Scott Poole, Natural Resources Defense Council, San Francisco, CA, Doug Andrew Obegi, Natural Resources Defense Council, San Francisco, CA, Bradley H. Oliphant, US Department of Justice, Env. & Natural Resources Division, Washington, DC, M. Reed Hopper, Brandon Murray Middleton, Pacific Legal Foundation, Sacramento, CA, for Intervenor Defendant.
Bridget Kennedy McNeil, United States Department of Justice, Environment & *1004 Natural Res. Div., Wildlife & Marine Resources, Denver, CO.

MEMORANDUM DECISION AND ORDER DENYING FEDERAL DEFENDANTS' MOTION TO DISMISS (DOC. 80), DENYING AS MOOT MOTIONS TO STRIKE PORTIONS OF MOTION TO DISMISS (DOC. 92, 97), AND DENYING MOTION TO STRIKE PORTIONS OF REPLY (DOC. 125)
OLIVER W. WANGER, District Judge.

I. INTRODUCTION

These consolidated cases all challenge a June 4, 2009 biological opinion issued by the National Marine Fisheries Service ("NMFS") finding that the coordinated operations of the federal Central Valley Project ("CVP") and State Water Project ("SWP") are likely to jeopardize the continued existence and adversely affect the critical habitat of certain salmonid and other species ("2009 Salmon BiOp").[1]
Before the court for decision is Federal Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), two of the six consolidated actions, namely the cases brought by (1) co-Plaintiffs Kern County Water Agency ("Kern") and Coalition For a Sustainable Delta ("Coalition") and (2) the Metropolitan Water District of Southern California ("Met"), as "duplicative" of (3) the consolidated lawsuit filed be the State Water Contractors ("SWC"). Doc. 80-2, filed Nov. 2, 2009. Alternatively, Federal Defendants argue that if the Kern/Coalition and Met cases remain viable, the SWC case should be dismissed for lack of standing, in part because Kern and Met are members of SWC. Id. SWC opposes dismissal on either ground, Doc. 99, as do Met, Doc. 102, and the Kern/Coalition plaintiffs, Doc. 107.
Federal Defendants replied, arguing, among other things, that dismissal of the Kern/Coalition action is appropriate, despite the fact that Kern's co-plaintiff, the Coalition, is not a member of the SWC. Nevertheless, "should the Court be inclined to deny this motion as to Coalition," Federal Defendants request that dismissal should be without prejudice, so that Federal Defendants can pursue discovery into the Coalition's membership. Doc. 114 at 6. The Coalition filed a motion to strike this argument, because it was raised for the first time in reply. Doc. 125. In the alternative, the Coalition requests leave to file a surreply addressing this argument, which has been lodged as Attachment A to their motion to strike. Doc. 125-2.
The Coalition and SWC separately move to strike those portions of Federal Defendants' motions that concern their claims, on the ground that Federal Defendants failed to give either the Coalition or SWC proper notice that they would be seeking dismissal of their claims. Docs. 92 & 97. The September 25, 2009 Scheduling Conference Order provided: "[i]f any party believes any ... issue is resolvable by early dispositive motion, that party shall give notice of the nature of the claims on or before October 10, 2009." Doc. 51 at 21. On October 5, 2009, Federal Defendants gave notice of their intent to move to dismiss the claims brought by KCWA and *1005 Met, but made no mention of the Coalition or SWC's claims, Doc. 55 at 1, nor have Federal Defendants made any request to modify the Scheduling Order. Federal Defendants oppose the motions to strike. Doc. 113. The Coalition and SWC replied. Docs. 127 & 128.

II. STANDARD OF DECISION

Federal Defendants rely exclusively on Federal Rule of Civil Procedure 12(b)(1), which allows a motion to dismiss for lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Fed.R.Civ.P. 8(a)(1). When a defendant challenges jurisdiction facially, all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir.2009).

III. DISCUSSION

A. The Challenged Parties.

In its Complaint, SWC alleges that "Plaintiff [SWC] is ... a non-profit mutual benefit corporation organized and existing under the laws of the State of California to represent the common interests of 27 public water supply agencies located in California's Central Valley, in the San Francisco Bay area, along California's Central Coast, and in Southern California." SWC Complaint at ¶ 14. SWC also alleges:
[T]he effects of Defendants' actions will be felt by [State Contractors] and its member agencies.... The member agencies of the State Contractors include 27 public districts and agencies which provide water in numerous counties, including to users in Kings and Kern Counties[,] ... reductions in exports from the Delta will place greater demands upon alternative sources of water, including groundwater, that are used to meet reasonable and beneficial water demands within Merced, Fresno, Kings and Kern Counties.
Id. at ¶ 13.
The Kern/Coalition Complaint contains the following allegations regarding Kern:
[Kern] is a public agency that was created in July 1961 by a special act of the California State Legislature and ratified by the electorate of Kern County in September 1961. [Kern] was granted the primary power to acquire and contract for water supplies for Kern County. (Kern Coalition Complaint at ¶ 9.) [Kern] is a wholesaler of SWP water for... agricultural and municipal and industrial uses. (Id.)
The service area for [Kern] encompasses all the territory within the San Joaquin Valley portion of Kern County. (Id.) [Kern] provides a portion of, and in some cases the entire water supply for approximately 719,000 acres of prime farmland ..., and for some 500,000 residents of Kern County. (Id.)
Approximately 98 percent of [Kern's] water is imported by the [State Water Project ("SWP")]. (Id.)
In terms of contract amount with [the Department of Water Resources *1006 ("DWR")], [Kern] is the second largest SWP contractor. (Id.)
The Kern/Coalition Complaint also contains the following allegations regarding the Coalition and its members:
Plaintiff Coalition is comprised of individual and agricultural water users and of individuals within the San Joaquin Valley. The Coalition is bringing this action on behalf of itself and its members. (Id. at ¶ 12.)
The purpose of the Coalition is to advance the interests of its members, namely, (1) to better the conditions of those engaged in agricultural pursuits in the San Joaquin Valley and (2) to ensure a sustainable and reliable water supply by protecting the Delta and promoting a strategy to ensure its sustainability. (Id.)
Certain Coalition members have contracts with various agencies for the delivery of [Central Valley Project ("CVP")] and SWP water, and as such, depend on CVP and SWP deliveries from the Delta to the San Joaquin Valley for their water supply. Certain Coalition members have contracts to receive water through 2035. These contracts are expected to be extended beyond that date. Thus, the Coalition and its members have a long-term interest in the overall health of the Delta and its ecosystem, which includes the maintenance of viable populations of the salmonids and the green sturgeon [at issue in the litigation]. (Id. at ¶ 13.)
Certain Coalition members' contracts for delivery of SWP water require payment for their full contractual entitlement regardless of the amount of water actually delivered in any given year through the SWP. (Id. at ¶ 14.)
[R]educed delivery of surface water through the SWP is likely to result in increased reliance on groundwater for irrigation supplies, which will result in overdraft of the groundwater basins that underlie the lands of the Coalition members. (Id.)
Coalition members view, enjoy, and use the Delta ecosystem. Coalition members routinely engage in various recreational activities in the Deltaincluding boating, fishing, and wildlife viewing and have concrete plans to continue to do so in the future.... The decline of the salmonids and the Listed Species has had and continues to have a substantial negative impact on Coalition members, impairing their use and enjoyment of the Delta and Listed Species. (Id. at ¶ 15.)
Met's Complaint alleges:
37. The Metropolitan Water District of Southern California is the largest provider of treated drinking water in the United States.
38. Metropolitan was created pursuant to an Act of the California Legislature in 1927 and was officially incorporated in December of 1928.
39. The mission of Metropolitan, as promulgated by its Board, is to provide its service area with adequate and reliable supplies of high quality water to meet present and future needs in an environmentally and economically responsible way.
40. Metropolitan's six-county service area encompasses 5,200 square miles in Los Angeles, Orange, Riverside, San Bernardino, San Diego and Ventura counties. Some agencies within this service area depend on Metropolitan to supply 100 percent of their water needs. In fact, 19 million Californiansapproximately half of the population of the staterely on Metropolitan for some or all of the water they use in their homes and businesses. Metropolitan's water supply helps sustain the economy of *1007 Southern California which generated a gross domestic product in 2006 of almost $970 billion. This economy is larger than most nations of the world.
41. Because Southern California has an arid climate and does not have sufficient local supplies of water to support its population and economy, water must be imported into the region. Metropolitan imports water from two principal sources: northern California via the SWP, and the Colorado River via the Colorado River Aqueduct.
42. Metropolitan faces massive challenges in providing a reliable and high quality water supply for Californians, including population growth, increasing environmental regulations, and variable weather conditions.
43. SWP water supplies are especially important to Metropolitan because SWP water has lower salinity content than Colorado River Aqueduct water. Through blending, SWP water helps attain water quality standards, facilitates use of recycled water, and increases groundwater conjunctive use applications.

B. Motion to Dismiss Duplicative Complaints.

Federal Defendants rely on Adams v. California Department of Health Services, 487 F.3d 684, 688 (2007), to support the unremarkable proposition that a district court generally has the discretion "to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." In Adams, the plaintiff, who was a challenging a state agency's decision not to hire her, sought to amend the complaint, but not until well after the deadline for amendment. The district court denied plaintiff's motion to amend and entered a final judgment. Id. at 687. "[I]n an attempt to avoid the consequences of her own delay and to circumvent the district court's denial of her untimely motion," the exact same plaintiff then filed a second lawsuit, raising similar claims, but naming some additional defendants. Id. at 688.
The Ninth Circuit began with the general proposition that "[p]laintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Id. Then, borrowing from the test for claim preclusion, Adams articulated a test for determining whether a suit is duplicative:
[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same.
Id. at 688-89.
Under the first part of the duplicative action test, "[t]o ascertain whether successive causes of action are the same, [a court should] use the transaction test, developed in the context of claim preclusion." Id. at 689.
Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together. In applying the transaction test, we examine four criteria: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.
Id. (internal citations and quotations omitted).
*1008 The two actions at issue in Adams shared a common transactional nucleus of facts. Likewise, it is undisputed that all six consolidated cases share a common transactional nucleus of facts, namely the issuance of the 2009 Salmon BiOp, and that the claims in all six cases substantially overlap. See Doc. 51 at 7-18.
Under the second part of the duplicative action test, a court must "examine whether... the parties or privies to the action[] are the same." Id. at 689. Adams applied the concept of "virtual representation" to determine whether several new defendants added to the second action were "in privity" with the original defendant. Id. at 689.
Although the concept of privity traditionally applied to a narrow class of relationships in which a person is so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved, we have expanded the concept to include a broader array of relationships which fit under the title of "virtual representation." The necessary elements of virtual representation are an identity of interests and adequate representation. Additional features of a virtual representation relationship include a close relationship, substantial participation, and tactical maneuvering.
Id. at 691. Applying the concept of "virtual representation," Adams found the new defendants were in privity with the old. In light of these findings, Adams concluded that the district court did not abuse its discretion by dismissing the second action with prejudice. Id. at 692.
Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the comprehensive disposition of litigation. In dismissing the duplicative suit with prejudice, the district court acted to protect the parties from vexatious and expensive litigation and to serve the societal interest in bringing an end to disputes.
* * *
Adams had a full and fair opportunity to raise and litigate in her first action the claims she now asserts in this action.
Id. at 692 (internal citations omitted).
The Supreme Court has since rejected "virtual representation" as a basis for finding privity in the preclusion context. Taylor v. Sturgell, 553 U.S. 880, 128 S.Ct. 2161, 2178, 171 L.Ed.2d 155 (2008). Instead, the Supreme Court articulated six categories of exceptions to the general rule forbidding nonparty preclusion. Id. at 2172. First, a "person who agrees to be bound by the determination of issues in an action between others is bound...." Id. Second, certain "pre-existing substantive legal relationships between the person to be bound and a party to the judgment" will bind certain non-parties. Id. (internal quotations omitted). Third, "in certain limited circumstances, a nonparty may be bound by a judgment [if] she was adequately represented by someone with the same interests who was a party to the suit." Id. (internal quotation omitted). Fourth, "a nonparty is bound by a judgment if she assumed control over the litigation in which the judgment was rendered." Id. at 2173 (internal quotation omitted). Fifth, "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." Id. Sixth, "in certain circumstances, a special statutory scheme may expressly foreclose successive litigation by nonlitigants ... if the scheme is otherwise consistent with due process." Id. (alteration in original).[2]
*1009 All, save the third exception, are obviously inapplicable. The first exception is inapplicable because there is no suggestion that Kern, Met, or SWC have agreed to be bound by the others' actions.
The second exception requires a pre-existing, substantive legal relationship, such as that arising between preceding and succeeding owners of property, bailees and bailors, and assignees and assignors, none of which apply here. Taylor, 128 S.Ct. at 2172.
The fourth exception applies when a nonparty assumed control of the prior litigation and then attempts to file its own case on the same grounds. Id. at 2173. In determining whether such control was asserted, a court considers whether the non-party: (1) required the previous lawsuit to be filed; (2) reviewed and approved the complaint; (3) paid attorneys' fees and costs; (4) directed the appeal; (5) appeared and submitted a brief as an amicus; (6) directed the filing of the notice of appeal; and (7) effectuated the abandonment of that appeal by a party in the proceeding. Montana v. United States, 440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Here, the Federal Defendants do not suggest this exception applies, as all cases were independently initiated.
The fifth exception does not apply because there has been no judgment in any of the consolidated actions, so it is not possible for any plaintiff to be relitigating through a proxy.
The sixth exception is inapplicable because there is no successive litigation or applicable "special statutory scheme" regarding successive litigation by non-parties.
The third exception concerns whether the non-party was adequately represented by a party with the same interests. Taylor, 128 S.Ct. at 2172. A party's representation of another is "adequate" if, at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care *1010 to protect the interests of the nonparty. Id. at 2176.
Federal Defendants cite Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1082 (9th Cir.2003), for the proposition that an association filing suit on behalf of its members automatically triggers the third exception. Tahoe Sierra held:
One of the relationships that has been deemed `sufficiently close' to justify a finding of privity is that of an organization or unincorporated association filing suit on behalf of its members.... Of course, the organization must adequately represent the interests of its individual members if its representation is to satisfy the due process concerns articulated in Hansberry v. Lee, 311 U.S. 32, 40, 43, 61 S.Ct. 115, 85 L.Ed. 22 (1940).... However, if there is no conflict between the organization and its members, and if the organization provides adequate representation on its members' behalf, individual members not named in a lawsuit may be bound by the judgment won or lost by their organization.
Id. at 1082 (internal citations omitted).
Federal Defendants suggest that the record demonstrates only the possibility of conflict amongst the members of the SWC, not conflict between the organization and its members. See Declaration of Terry Erlewine, Doc. 103, ¶¶ 8-9 (SWC's members "do not always have common interests;" SWC's members' "interests do not necessarily align"). Federal Defendants also suggest that SWC can provide adequate representation on its members' behalf given that SWC is seeking the same declaratory and prospective relief sought by its members.
Federal Defendants ignore two important issues. First, SWC and its members, Kern and Met, specifically disclaim having any understanding that SWC would be acting in a complete representative capacity. Kern and Met serve different types of water users with potentially conflicting interests, as each water users seeks water it has contracted for, even at the expense of other water users. SWC is representing only the common interests of its diverse membership:
[SWC] represents only the common interests of its 27 member agencies, not the individual interests of just two of those 27 members.... As emphasized above, the State Contractors represent only the `common interests' of their 27 member agencies, not any individual, distinct interests of KCWA, MWD, or any other member agency may have.... [SWC] recognize[s] that they cannot represent each of their members' special, individualized interest and are instead concerned with protecting the members' common interests.
Doc. 99 at 16, 21.
Second, Federal Defendants fail to acknowledge the complex reality in which the two member plaintiffs operate. For example, Met obtains water from multiple non-CVP sources, including the Colorado River, local watersheds, and water re-use facilities, which it mixes with SWP water before delivery to domestic, industrial, and agricultural users. Because of the potentially higher legal and contractual priorities assigned to domestic over agricultural use, Met is likely to have different, and potentially conflicting priorities, as compared to the Kern/Coalition plaintiffs, which represent primarily agricultural users in the southern San Joaquin Valley. While SWC, a highly experienced litigant, may take the laboring oar with respect to interests that Met, Kern, and its 25 other members may share, SWC cannot act in a "representative" capacity to pursue specific relief that benefits some of its members at the expense of others. Met and Kern *1011 are entitled to pursue their unique and potentially differing interests separately, while relying on SWC to represent the common interests of all SWP users. Under the circumstances, Met and Kern are not in privity with SWC for all purposes of the duplicative action inquiry.
Even if, arguendo, the Adams/Taylor duplicative action test were satisfied here, the district court has exercised its discretion to consolidate, rather than dismiss, the challenged complaints. This approach, which is articulated in detail in the scheduling order and which has been followed in the parallel Delta Smelt Consolidated Cases, 1:09-cv-00407, adequately preserves the parties' unique interests, and conserves party and judicial resources. Federal Defendants have not demonstrated any prejudice will result from maintaining these cases as consolidated actions. Every effort is being made to eliminate duplication and promote party and judicial economy. It is preferable to do so simultaneously in consolidated cases rather than separately, in six cases.
The motion to dismiss the Kern/Coalition and Met complaints as duplicative is DENIED.

C. Motion to Dismiss State Water Contractor's Complaint For Lack of Standing.

Alternatively, Federal Defendants contend that "if the direct participation of the KCWA Plaintiffs and MWD is necessary to protect their asserted claims and requested relief ..., then SWC lacks standing and must be dismissed." Doc. 80-2 at 10. An organization can establish standing to sue on behalf of its individual members if: (1) its members would otherwise have standing to sue in their own right; (ii) the interests it seeks to protect are germane to the organization's purpose; and (iii) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 342-43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance Corp. of Am., 919 F.2d 1398, 1400 (9th Cir.1990).
It is undisputed that both Kern and Met are individual member agencies of SWC. Federal Defendants maintain that, under Hunt's third prong, "in order for SWC to have standing to sue on their behalf, the participation in this lawsuit of the KCWA Plaintiffs or MWD cannot be necessary to the prosecution of SWC's claims or its requested relief." Doc. 80-2 at 10. Federal Defendants' argument continues:
It appears, however, that the KCWA Plaintiffs and MWD do consider their direct participation necessary. After SWC filed suit, for example, both filed their own lawsuits, which, as detailed above, assert substantively identical claims and seek the same relief sought by SWC. Moreover, the KCWA Plaintiffs and MWD have each engaged their own counsel of record to prosecute these (overlapping) claims. If their direct participation is necessary, as these actions suggest, SWC cannot establish the third prong necessary to show associational standingthat neither its claims asserted nor its relief requested requires participation of individual membersand it must be dismissed.
Id. at 10-11.
Federal Defendants misapply the scope of Hunt's third prong. Hunt itself sheds little light on the application of this element. However, Hunt's three-part test relies heavily upon Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In Warth, the Supreme Court rejected an association's argument that it had standing to bring damages claims on *1012 behalf of individual members "not common to the entire membership, nor shared by all in equal degree." Id. at 515, 95 S.Ct. 2197. To the contrary, Warth concluded that "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." Id. at 515-16, 95 S.Ct. 2197. "Thus, to obtain relief in damages, each member of [the association] who claims injury as a result of respondent' practices must be a party to the suit, and [the association] has no standing to claim damages on his behalf." Id. at 516, 95 S.Ct. 2197.
Here, while Kern and Met have the right to separately sue to protect their own, unique interests, their participation is not a legal prerequisite to SWC's maintenance of its challenge to the 2009 Salmon BiOp on behalf of the common interests of its members and its request for appropriate injunctive relief. As SWC undisputably satisfies the first two Hunt requirements(1) its members would otherwise have standing to sue in their own right, as each is injured by Defendants' actions, and (2) the interests SWC seeks to protect are germane to its organizational purpose, preserving contractual and related water rights and suppliesSWC has organizational standing to pursue these common-interest claims. It is not necessary to address SWC's alternative basis for standing in its own right.
The motion to dismiss for lack of standing is DENIED.

D. Motions to Strike.

Denial of the motion to dismiss moots two of the related motions to strike, which concern only the merits of the motion to dismiss. Doc. 92, 97.
The third motion to strike, filed by the Coalition, concerns Federal Defendants' request in its reply that denial of their motion to dismiss should be without prejudice, so that Federal Defendants can pursue discovery into Coalition's membership. Doc. 114 at 6. The Coalition moves to strike this argument because it was raised for the first time in reply. Doc. 125. In the alternative, the Coalition requests leave to file a surreply addressing this argument, which has been lodged as Attachment A to their motion to strike. Doc. 125-2. Although advanced for the first time in a reply brief, Federal Defendants' request for a denial of its motion without prejudice pending discovery is not unexpected and will be considered. Because it constitutes new material, the Coalition's surreply will also be considered. The motion to strike is DENIED.
The merits of the argument and the surreply are easily resolved. As a matter of law, if the court determines "at any time" that it lacks subject matter jurisdiction, the court must dismiss an action. See Fed.R.Civ.P. 12(b)(1). It is perfectly permissible for a defendant to move to dismiss under this rule on multiple occasions, for example, if new evidence is discovered. See Arbaugh v. Y & H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). Accordingly, denial of a Rule 12(b)(1) motion is inherently without prejudice.
As for the Federal Defendants' right to obtain discovery from the Coalition, no such discovery motion is before the court at this time. Ordinarily, preliminary discovery directed at a parties' standing is permitted. The matter was not resolved at the hearing on these motions.

IV. CONCLUSION

For the reasons set forth above:
*1013 (1) Federal Defendants' motion to dismiss the Kern/Coalition and Met complaints as duplicative is DENIED;
(2) Federal Defendants' motion to dismiss SWC's complaint for lack of standing is DENIED;
(3) Kern/Coalition and Met's motions to strike portions of the motion to dismiss are DENIED AS MOOT;
(4) The Coalition's motion to strike portions of Federal Defendants' reply brief is DENIED, but the Coalition's surreply will be considered.
SO ORDERED.
NOTES
[1] The species addressed by this biological opinion are: (1) endangered Sacramento River winter-run Chinook salmon (Oncorhynchus tshawytscha) ("winter-run"); (2) threatened Central Valley spring-run Chinook salmon (O.tshawytscha) ("spring-run"); (3) threatened Central Valley ("CV") steelhead (O.mykiss); (4) threatened Central California Coast ("CCC") steelhead (O.mykiss); (5) threatened Southern Distinct Population Segment ("DPS") of North American green sturgeon (Acipenser medirostris) ("Southern DPS of green sturgeon"); and (6) endangered Southern Resident killer whales (Orcinus orca) ("Southern Residents") (collectively, the "Listed Species").
[2] Plaintiffs protest that Adams' duplicative action test, even with Taylor's privity standard replacing the "virtual representation" doctrine, should not be applied here because, unlike in Adams, Taylor, and every other case cited by Federal Defendants, no claim or issue has reached final judgment in any of the Consolidated Salmon Cases. See also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1082 (9th Cir. 2003) (individual members of a property owners association precluded from bringing subsequent action because the association had already litigated the same claims in an earlier suit); Bolden v. Pennsylvania State Police, 578 F.2d 912 (3d Cir.1978)(upholding denial of motion to intervene by Fraternal Order of Police ("FOP") and some of its individual members in a case to challenge the terms of a final consent decree in light of evidence that FOP voted to approve entry into consent decree); Yankton Sioux Tribe v. U.S. Department of Health & Human Services, 533 F.3d 634 (8th Cir.2008)(affirming dismissal of lawsuit brought by Tribe and individual member of Tribe to relitigate claims brought to judgment by Tribe in previous lawsuit).

Plaintiffs are correct that Adams is distinguishable. However, before judgment is entered in any possibly duplicative action, the trial court retains the discretion to dismiss, stay, or consolidate the duplicative actions. For example, in Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir.1977), which Adams quoted for the general rule that "[p]laintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant," the Third Circuit approved of a district court's consolidation of two nearly identical lawsuits brought by the same plaintiff, on its own motion and before any judgments had been entered. Walton also noted that dismissal or stay of the later-filed action would have been permissible. Id. Here, the district court retains the same power to control its docket with respect to duplicative actions. However, the question remains whether the Taylor privity standard is met in connection with the challenged lawsuits.